**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DEALER COMPUTER SERVICES, INC., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>WILLIAM C. MULLER, JR., *et al.*,<br><br>Defendants. | Civil Action No. 21-19811 (GC) (TJB)<br><br>**OPINION**<br><br>**FILED UNDER SEAL** |

**CASTNER, District Judge**

**THIS MATTER** comes before the Court upon four motions: Plaintiffs Dealer Computer Services, Inc., Callbright Corp., Coin Data, LLC, and The Reynolds and Reynolds Co.'s Motion for Summary Judgment (ECF No. 109) under Federal Rule of Civil Procedure (Rule) 56; Defendants Albert Preziosi, Chris Preziosi, and Route 31 Imports, LLC's (the Buyer Defendants) Cross-Motion for Summary Judgment (ECF No. 113) under Rule 56; Defendant Michele Tolotta's Cross-Motion for Summary Judgment (ECF No. 122) under Rule 56; and the Buyer Defendants' Motion for Sanctions against Plaintiffs and Plaintiffs' attorneys (ECF No. 117) under Rule 11. Defendants MPS 22, LLC, SRQ Auto Consultants, LLC, Muller Powersports, LLC, Muller Realty, LLC, JJM Realty Enterprises, LLC, and Rellum Realty, LLC[1] did not file an opposition to Plaintiffs' Motion. Otherwise, the Motions were fully briefed by the relevant parties. (*See* ECF Nos. 109-117, 120-122, 125-129, 131-134.) The Court has carefully reviewed the parties' submissions and decides the matter following oral argument held on March 26, 2026. (ECF No.

[1] Plaintiffs do not seek summary judgment as to Defendant William C. Muller, Jr. (ECF No. 109-1; ECF No. 110 at 5 n.1.)

162.) For the reasons set forth below, and other good cause shown, Plaintiffs' Motion for Summary Judgment is **DENIED** as to the Buyer Defendants, Michele Tolotta, SRQ Auto, Muller Realty and Muller Powersports and **GRANTED in part** as to MPS 22; the Buyer Defendants' Motion for Summary Judgment is **GRANTED**; Michele Tolotta's Motion for Summary Judgment is **GRANTED**; and the Buyer Defendants' Motion for Sanctions is **DENIED**.

## I. <u>BACKGROUND</u>

### A. Factual Background[2]

This action is brought by a group of affiliated businesses that provided computer services to a Toyota car dealership owned by non-party Muller Automotive Group, Inc. (MAG) (the Toyota Dealership). (ECF No. 110 at 5; *see also* ECF No. 112-10.)[3] Defendant William C. Muller, Jr.

---

2 On a motion for summary judgment, the Court "draw[s] all reasonable inferences from the underlying facts in the light most favorable to the nonmoving party." *Jaffal v. Dir. Newark N.J. Field Off. Immigr. & Customs Enf't*, 23 F.4th 275, 281 (3d Cir. 2022) (quoting *Bryan v. United States*, 913 F.3d 356, 361 n.10 (3d Cir. 2019)). The factual circumstances surrounding this action, as revealed through discovery, are set forth in the parties' submissions in accordance with Local Civil Rule 56.1. In briefing the pending Motions for Summary Judgment, the parties submitted various statements asserting certain undisputed material facts and challenging the undisputed material facts of the other parties. (*See* ECF Nos. 111, 115, 121-1, 122-1, 127, 131-1, 132-1.) However, Defendants MPS 22, LLC, SRQ Auto Consultants, LLC, Muller Powersports, LLC, Muller Realty, LLC, JJM Realty Enterprises, LLC, and Rellum Realty, LLC did not submit an opposition to Plaintiffs' Motion. Under the Federal Rules of Civil Procedure, "[i]f a party fails to properly . . . address another party's assertion of fact as required by Rule 56(c)," then "the court may . . . consider the fact undisputed for the purposes of the motion." Fed. R. Civ. P. 56(e)(2). And under the Local Rules, an opponent of summary judgment "shall furnish . . . a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement[.]" L. Civ. R. 56.1(a). "[A]ny material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion." *Id.*; *see also Yocham v. Novartis Pharms. Corp.*, 736 F. Supp. 2d 875, 879 (D.N.J. 2010) ("[T]he consequence of the opponent's failure to address the movant's Statement of Material Facts not in Dispute has long been clear, namely, the movant's facts, duly cited to the record of evidence, are deemed unopposed for purposes of adjudicating the motion.").

3 Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties. However, references to page

was the president, chief executive officer, and sole shareholder of MAG. (ECF No. 111 ¶¶ 2-3; ECF No. 121-1 ¶¶ 2-3; ECF No. 116 ¶ 1; ECF No. 121-4 ¶ 1.) MAG sold the Toyota Dealership to Route 31 Imports, of which Chris Preziosi and Albert Preziosi are the sole members (the Dealership Sale).[4] (ECF No. 111 ¶ 6; ECF No. 121-1 ¶ 6; ECF No. 121-2 ¶¶ 1-2, 4, 7; ECF No. 120-17 ¶¶ 1-2, 4, 7.) Plaintiffs allege that MAG had outstanding debts to Plaintiffs at the time of the sale and that MAG fraudulently transferred its assets through the Dealership Sale and related transfers to avoid paying those debts. (ECF No. 110 at 5.) The disputed transfers involved the Buyer Defendants as well as several Defendant LLCs led by Muller:[5] Plaintiffs allege that JJM Realty, Rellum Realty, and Muller Realty were involved with real estate at issue in the Dealership Sale (ECF No. 1 ¶¶ 24, 58-61); SRQ Auto Consultants received payments pursuant to the Dealership Sale (*id.* ¶¶ 35-43); MPS 22 received proceeds from the Dealership Sale (*id.* ¶¶ 44-54); and Muller Powersports, which is led by Muller and his two sons and allegedly operates another car dealership in the area, (*id.* ¶ 57; ECF No. 111 ¶ 23; ECF No. 121-1 ¶ 23), fraudulently received a transfer of inventory from MAG after the Dealership Sale (*id.* ¶¶ 55-57). Accordingly, Plaintiffs allege Defendants violated New Jersey's Uniform Fraudulent Transfer Act and conspired to do so. (*Id.* ¶¶ 78-113.)

---

numbers of deposition transcripts refer to the internal transcript page numbers, not the Court's e-filing system.

[4] Chris Preziosi and Albert Preziosi are the co-managing Directors of the World Auto Group organization. (ECF No. 112-6 at 14:16-25.) As of 2019, they operated 10 car dealerships and had $460,000,000.00 in annual sales. (*Id.* at 16:2-4, 22:21-24.)

[5] Plaintiffs' Statement of Undisputed Material Fact (SUMF) does not clarify the owner of JJM Realty or Rellum Realty and cites only inadmissible deposition testimony, as discussed *infra*, to establish Muller's ownership of Muller Realty. (*See* ECF No. 111 ¶ 28). Therefore, the Court cannot conclude that Muller Realty, JJM Realty and Rellum Realty are owned by Muller.

### *1. The Dealership Sale*

On or about April 13, 2018, MAG and the Preziosis signed an Asset Sale Agreement (ASA) outlining the terms of the sale of the Toyota Dealership's assets (the Asset Transaction) in anticipation of a later closing date (Closing).[6] (ECF No. 111 ¶ 4; ECF No. 121-1 ¶ 4; *see generally* ECF No. 112-2.) The ASA included a purchase price of $6,500,000.00 for the dealership's operating assets, and the Preziosis also agreed to purchase MAG's inventory of motor vehicles, car parts and car accessories.[7] (ECF No. 112-2 at 3-5.) While the ASA required the Preziosis to assume certain obligations of MAG, the list of assumed obligations did not include any obligations purportedly owed by MAG to Plaintiffs. (*Id.* at 17-18, 40-43, 50-53.) On June 7, 2018, over two weeks prior to Closing, the Preziosis assigned their rights in the ASA to Route 31 Imports, LLC. (ECF No. 121-1 ¶ 47; ECF No. 131-1 ¶ 47; ECF No. 112-2 at 49.)

### *2. The Real Estate Agreements and the Consulting Agreement*

The ASA included two provisions requiring three additional agreements: two for the purchase of real estate related to the dealership (the Real Estate Agreements, agreeing to the Real Estate Transaction) and one for consulting services (the Consulting Agreement). (ECF No. 112-2

---

6 "In a typical asset transaction, . . . the buyer purchases individual assets of the company, such as equipment, fixtures, leaseholds, licenses, goodwill, trade secrets, trade names, telephone numbers, and inventory. Since the buyer in an asset sale is not purchasing the ownership interests of the company, the buyer generally does not assume any liabilities of the seller and does not become an owner or operator of the selling company." *In re Mechanicsburg Fitness, Inc.*, Civ. No. 16-1897, 2019 WL 2093083, at *7 (Bankr. M.D. Pa. May 10, 2019).

7 Plaintiffs note that "the manufacturer 'franchise' itself is not an asset subject to sale, since it is generally not transferable, rather the seller's franchise with the manufacturer is typically revoked and reissued to the buyer." (ECF No. 131-1 ¶ 46.)

at 7, 21.) The Real Estate Agreements and the Consulting Agreement are described in the ASA as "express and prime inducement[s]" for the parties to enter into the ASA.[8] (*Id.*)

Indeed, on April 13, 2018 (the same day the ASA was signed), the Preziosis entered into a Real Estate Agreement with Rellum Realty to purchase the real property at 2017 Route 31 in Lebanon, New Jersey, with Closing to occur at a later date.[9] (ECF No. 121-16 at 2, 14.) The ASA describes this property as the dealership "Sales Premises." (ECF No. 112-2 at 2, 7.) The Preziosis also entered into a Real Estate Agreement with JJM Realty to purchase the real property at 2020 Route 31 in Lebanon, New Jersey. (ECF No. 121-15.) The ASA describes this property as the dealership "Service Premises." (ECF No. 112-2 at 2, 7.) The Real Estate Agreements describe a "collective purchase price" of $10,300,000.00 to be paid for both properties, with the parties agreeing to the exact allocation of the purchase price between the properties at Closing. (ECF No. 121-15 at 3-4; ECF No. 121-16 at 3-4.) The Real Estate Agreements do not refer to Muller Realty. (*See generally* ECF No. 121-15; ECF No. 121-16.) On June 7, 2018, over two weeks prior to Closing, the Preziosis assigned their rights in the Real Estate Agreements to non-party Route 31 Imports Realty, LLC (Route 31 Realty). (ECF No. 120-17 ¶ 4; ECF No. 121-2 ¶ 4; ECF No. 121-

---

[8] The Real Estate Agreements are described in the ASA as an "express and prime inducement" for "the parties" to enter into the ASA, whereas the Consulting Agreement is described as an "express and prime inducement" for "MAG" to enter into the ASA. (*Compare* ECF No. 112-2 at 7, *with* ECF No. 112-2 at 21.)

[9] The Court notes that it is not necessarily unusual for the assets and real estate of an automobile dealership to be sold separately. *See, e.g.*, *Donovan Realty, LLC v. Campers Inn Holding Corp.*, Civ. Nos. 24-3115, 24-3152, 2026 WL 357801, at *1 (3d Cir. Feb 9, 2026) (discussing sale of two recreational vehicle dealerships in which the parties executed separate asset and real estate purchase agreements); *DCD Nucar Alni LLC v. Rothrock Motor Sales, Inc.*, Civ. No. 25-4327, 2026 WL 800957, at *2 (E.D. Pa. Mar. 23, 2026) (describing an automobile dealership sale with separate asset and real estate sales agreements).

17.) At the time of the assignment, Chris Preziosi was the operating manager of Route 31 Realty. (ECF No. 121-17.)

As for the Consulting Agreement, the ASA included a draft of the agreement, but it was not signed until Closing. (ECF No. 112-2 at 45-46; ECF No. 112-17.) The signed Consulting Agreement is between Route 31 Imports and SRQ Auto Consultants, an entity created by Muller in March 2018 of which Muller was the sole member. (ECF No. 112-16; ECF No. 112-17 at 2.) The Consulting Agreement requires SRQ Auto Consultants to, "upon reasonable advance notice," provide consulting services to the Toyota Dealership on topics including organization and management, financial and employment policies, customer relations, and other matters arising from the operation of the dealership for five years. (ECF No. 112-17 at 2-3.) In return, Route 31 Imports agreed to pay SRQ Auto Consultants $500,000.00 across 60 monthly installments. (*Id.* at 3.)

***3. Closing***

The Asset Transaction and the Real Estate Transaction took place on June 26, 2018. (ECF No. 120-2 (asset sale closing statement); ECF No. 120-3 (bill of sale for asset sale); ECF No. 120-4 (real estate sale settlement statement); ECF No. 120-13 (escrow ledger card); ECF No. 120-1 ¶ 10.) This is also the date on which Route 31 Imports and SRQ Auto Consultants signed the Consulting Agreement. (ECF No. 112-17.) The Preziosis had assigned their rights in the ASA and Real Estate Agreements to Route 31 Imports, and indeed they did not sign the Consulting Agreement in their individual capacities. (*Id.*)

At Closing, the parties valued the vehicles, parts and accessories of the Toyota Dealership at $6,117,883.07. (ECF No. 120-2 at 4.) With a purchase price for the operating assets of

$6,500,000.00 (and $4,135.27 for "work in process"[10]), the balance owed by Route 31 Imports to MAG for the dealership assets—before factoring in liabilities—came out to $12,622,018.34. (*Id.*) This total was then offset by over $6 million in outstanding notes that remained on the vehicle inventory as well as the payoff of two MAG loans. (*Id.* at 3-4.)

In 2008 and 2012, MAG received two loans from Toyota Motor Capital Corporation (TMCC): a capital loan for $4,841,227.53 and an inventory loan for a nonspecific amount, respectively, by which TMCC received a first priority security interest in collateral of MAG. (ECF No. 121-1 ¶¶ 38-42, 45; ECF No. 131-1 ¶¶ 38-42, 44; ECF No. 121-6 at 2-3; ECF No. 121-7 at 5, 7-8; ECF No. 115 ¶¶ 1, 4; ECF No. 127 ¶ 1, 4; ECF No. 120-8.) On June 27, 2018, TMCC sent two payoff demands for each of these loans, which were paid the same day. (ECF No. 120-15; ECF No. 120-13; ECF No. 113-13 ¶¶ 5-7.) The president of the settlement agency used by the parties to the Dealership Sale avers that the payments pursuant to the loan payoff letters addressed to MAG were "fully funded with the $7,570,000 received from Route 31 Imports, LLC" at Closing. (ECF No. 113-13 ¶ 10.)

As for the Real Estate Transaction, at Closing, Route 31 Realty, JJM Realty and Rellum Realty signed a settlement statement summarizing the sale. (ECF No. 120-4 at 3.) As the parties had earlier agreed, both properties were purchased for a contract price of $10,300,000.00. (*Id.* at 2; ECF No. 121-15 at 3; ECF No. 121-16 at 3.) Route 31 Realty paid in part using a new loan from Toyota Financial Services of $9,900,000.00. (ECF No. 120-4 at 2, lines 201-02 ("Amounts Paid By Or In Behalf Of [Buyer]"); *see also* ECF No. 120-1 ¶ 21.) After accounting for other

---

[10] The ASA explains that "[Route 31 Imports] shall reimburse [MAG] on the Closing date for [MAG's] net direct cost of completed labor and parts installed, or materials used, or in process of installation on any uncompleted repair orders in process on the Closing date," as uncompleted repair orders "shall become the property of [Route 31 Imports]." (ECF No. 112-2 at 16.)

charges and deposits, Route 31 Realty needed to bring $353,296.25 in cash to Closing.[11] (ECF No. 120-4 at 2, line 303.) And after factoring in closing costs and other payments, JJM Realty and Rellum Realty would receive $116,709.19 total.[12] (*Id.*, line 603.)

Loans also encumbered the real estate assets, and on June 27, 2018, TMCC sent two demands for payoff for loans related to the real estate: one letter was jointly addressed to JJM Realty and Rellum Realty regarding a "real estate loan," (ECF No. 120-16 at 3), and one was addressed to Muller Realty regarding another "real estate loan," (*id.* at 2). Indeed, the settlement statement from the Real Estate Transaction indicates that two mortgage loans existed on the properties at the time of sale—one valued at $8,258,106.95 and a second valued at $1,229,546.57—and that those would be paid as part of the settlement.[13] (ECF No. 120-4 at 2, lines 504-05 ("Reductions In Amount Due To Seller").) And although Muller Realty was not a party to the Real Estate Agreements, (ECF No. 112-15; ECF No. 112-16), in 2010, MAG agreed to serve as Guarantor for a $1,716,000.00 loan from TMCC to Muller Realty. (ECF No. 121-1 ¶¶ 43-45; ECF No. 131-1 ¶¶ 43-45; ECF No. 121-8; ECF No. 121-9.) Upon receipt of the demand letters, these loans were paid off the same day. (ECF No. 113-13 ¶¶ 8-10.) The president of the settlement agency used by the parties to the Dealership Sale avers that the payments pursuant to the loan payoff letters addressed to JJM Realty, Rellum Realty and Muller Realty were "fully

---

[11] Route 31 Realty paid a $200,000.00 deposit when it signed the Real Estate Agreements. (ECF No. 120-4 at 2, lines 201-02 ("Amounts Paid By Or In Behalf Of [Buyer]"); *see also* ECF No. 120-1 ¶ 21.) This deposit was accounted for in the amount due at Closing.

[12] The record does not establish how this amount would be split between them.

[13] A line on the settlement statement for "Existing loan(s) taken subject to" was left blank, indicating that Route 31 Realty would not take the real estate subject to any loans. (ECF No. 120-4 at 2, line 503.)

funded by the $9,900,000 loan proceeds received from Toyota Financial Services on behalf of Route 31 Realty, LLC."[14] (*Id.* ¶ 10.)

#### *4. The GE Lien*

At the time of the Dealership Sale, there was an additional lien on "all personal property" of MAG. (ECF No. 121-23 at 3.) In 2014, GE Commercial Distribution Finance Corporation (GE) recorded this security interest and subsequently filed multiple continuation statements, including one as recently as 2023.[15] (ECF No. 116 ¶¶ 44-45; ECF No. 121-23 at 6-7.) The subject matter and terms of the agreement between MAG and GE are not in the record before the Court, and therefore further details are unknown.

#### *5. After Closing*

After Closing, Route 31 Imports paid SRQ Auto Consultants the monthly installment as detailed in the Consulting Agreement until the commencement of the instant litigation, conveying $349,999.86 before ceasing payments. (ECF No. 120-1 ¶ 23.) During that time, it is undisputed that SRQ Auto Consultants provided no consulting services to Route 31 Imports. (ECF No. 111 ¶ 15; ECF No. 121-1 ¶ 15.) On September 27, 2019, SRQ Auto Consultants was administratively dissolved for failure to file an annual report. (ECF No. 111 ¶ 14; ECF No. 121-1 ¶ 14; ECF No. 112-16.)

Further, Plaintiffs assert that on September 27, 2018, MAG sent $710,632.62 in proceeds from the Dealership Sale to MPS 22, which Muller created several weeks prior to Closing.[16] (ECF

---

[14] On August 13, 2018, TMCC filed a termination statement releasing its lien on MAG's collateral. (ECF No. 121-5 at 9.)

[15] GE recorded name changes, and the secured party is now Wells Fargo Commercial Distribution Finance, LLC. (ECF No. 116 ¶ 44; ECF No. 121-23 at 5.)

[16] MPS 22 was created earlier that month, on September 6, 2018. (ECF No. 112-18.)

No. 111 ¶¶ 17-20; ECF No. 121-1 ¶¶ 17-20; ECF No. 112-19 at 6-7, 11-12; ECF. No. 112-18; ECF No. 112-21; ECF No. 112-22.) MPS 22 applied for a brokerage account with Park Avenue Securities on September 26, 2018 and received a welcome letter on October 1, 2018. (ECF No. 111 ¶ 19; ECF No. 121-1 ¶ 19; ECF No. 112-19 at 2-3, 6.) Pershing LLC, which is the "clearing agent and/or the custodian" of MPS 22's account with Park Avenue Securities, (ECF No. 112-19 at 6), received a check with the memo "Balance of Closing Proceeds" for $710,632.62 on September 27, 2018, (ECF No. 112-21 at 2-3).[17]

In addition, Plaintiffs assert that, after Closing, MAG transferred used cars worth $1,191,006.00 to Muller Powersports and received nothing in return. (ECF No. 111 ¶¶ 26-27; ECF No. 121 ¶¶ 26-27.)

Plaintiffs further assert that MAG was insolvent at the time of the Dealership Sale. (ECF No. 111 ¶ 8; ECF No. 121-1 ¶ 8.) MAG dissolved without assets on October 8, 2019. (ECF No. 112-36.) On November 6, 2024, Muller informed this Court that he was the subject of bankruptcy proceedings in the Middle District of Florida, and Plaintiffs aver that Muller "obtained a bankruptcy discharge while [the instant] litigation was pending." (*See* ECF No. 101; ECF No. 110 at 5, 5 n.1, 31 n.3.)

#### *6. Payment to Tolotta*

Michele Tolotta is Muller's former wife. (ECF No. 111 ¶ 32; ECF No. 122-1 ¶ 32.) Tolotta sought equitable distribution arising from the proceeds of the Dealership Sale, pursuant to the terms of the parties' Marital Settlement Agreement (MSA). (ECF No. 122-4 at 3; ECF No. 122-6 at 3.) Upon learning of the Dealership Sale, Tolotta demanded such distribution from Muller, but

[17] Plaintiffs contend that MPS 22 subsequently transferred this sum "to a second brokerage account" in the name of Muller Powersports, and then to Muller's "individual brokerage account." (ECF No. 111 ¶¶ 21, 24-25; ECF No. 121-1 ¶¶ 21, 24-25.)

he refused. (ECF No. 122-2 ¶ 5; ECF No. 122-3 ¶¶ 4-5.) Tolotta pursued and, on June 25, 2018, was granted an Order to Show Cause (OTSC) requiring "all proceeds from the sale of the Muller Toyota Dealership shall be held in escrow." (ECF No. 122-4 at 2.) Indeed, the OTSC states that pursuant to the parties' MSA, Muller owed Tolotta $2,500,000 "for her interest in two car dealerships," including the Toyota Dealership, with any future sale of the dealerships requiring payment of "the balance of any unpaid equitable distribution from the proceeds of the sale."[18] (*Id.* at 2-3.) The court later ordered that the proceeds from the Dealership Sale, "after payment of all liens, taxes of all kinds, required escrows and closing related attorney fees," be paid to Tolotta pursuant to "court order or agreement of the parties." (ECF No. 122-3 ¶ 6; ECF No. 122-5 at 3.) On October 17, 2018, a Consent Order was entered by the court stating that Muller owed Tolotta $1,182,882.33 pursuant to their MSA. (ECF No. 122-6.) "[T]o satisfy the above amount," the Consent Order directed that "$50,000 from the escrow" would be paid to Tolotta, which Tolotta received. (ECF No. 122-6 ¶ 2; ECF No. 122-3 ¶¶ 7-8.)

***7. The Judgment Action***

On October 5, 2018, Plaintiffs initiated arbitration against MAG after it defaulted on its contracts with them.[19] *See Dealer Comp. Servs., Inc. v. Muller Auto. Grp., Inc.* (*Judgment Action*), Civ. No. 19-20768 (D.N.J.), ECF No. 1 ¶ 5, ECF No. 3-1 at 3.[20] Plaintiffs' contracts with MAG

---

18 Tolotta avers that on May 5, 2010, an Amended Judgment of Divorce was entered but did not alter the equitable distribution. (ECF No. 122-2 ¶ 4.)

19 The Buyer Defendants and Michele Tolotta did not appear or participate in the Judgment Action. *See generally Dealer Comp. Servs., Inc. v. Muller Auto. Grp., Inc.*, Civ. No. 19-20768 (D.N.J.).

20 The Court takes judicial notice of the public docket and its filings. *See S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999). At summary judgment, the Court may consider such judicially noticed records to find facts. *See id.* at 427 n.7 (noting the Third Circuit has held that "a court that examines a transcript of a prior proceeding to

ran for terms beyond the date of the Dealership Sale, and Plaintiffs therefore sought damages arising from lost revenues before the terms ended. *Judgment Action*, ECF No. 1 at 18. On October 23, 2019, the arbitration panel awarded Plaintiffs $1,304,545.73 plus interest from MAG. *Id.* at 28, ECF No. 3-1 at 3.

On November 26, 2019, Plaintiffs filed a petition to confirm the arbitration award in this Court; MAG did not file an opposition. *See generally Judgment Action*, ECF No. 1. On March 26, 2020, the Court entered an order confirming the arbitration award in Plaintiffs' favor against MAG in the amount of $1,642,508.82, which included damages and interest. (ECF No. 112-1.) Plaintiffs assert that this judgment remains unsatisfied by MAG. (ECF No. 111 ¶ 1; ECF No. 121-1 ¶ 1.)

### B. Procedural Background

On November 5, 2021, Plaintiffs filed this action against all Defendants.[21] (ECF No. 1.) The Complaint asserts six state law claims. Counts I and II assert claims of fraudulent transfer under the New Jersey Uniform Fraudulent Transfer Act (UFTA),[22] N.J. Stat. Ann. § 25:2-20 *et*

---

find facts converts a motion to dismiss into a motion for summary judgment" (citing *Kauffman v. Moss*, 420 F.2d 1270, 1274-75 (3d Cir. 1970)).

[21] The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

[22] In August 2021, the Uniform Fraudulent Transfer Act (UFTA) was amended and became the New Jersey Uniform Voidable Transactions Act (UVTA). The UVTA uses the term "voidable" instead of "fraudulent," and clarifies that actions brought under section 25:2-27 must be proven by a preponderance of the evidence. *Compare* N.J. Stat. Ann. § 25:2-27 (2018), *with* N.J. Stat. Ann. § 25:2-27 (2025). Because the events at issue here occurred prior to the amendment, and there is no express provision in the UVTA that states that it applies retroactively, the Court refers to the law as the UFTA and uses the version of the law as of 2018, which was applicable at the time the conveyances at issue occurred. (See ECF No. 121 at 21 n.2 (noting change in the law).) *See also Gurevitch v. Curtis*, Civ. No. 21-14592, 2024 WL 4903590, at *8 (D.N.J. Nov. 27, 2024) ("Since all the transfers at issue were made prior to August 2021, the Court will rely on the earlier version of the UFTA."); *Aetna Health Inc. v. Biodiagnostic Lab'y Servs., L.L.C.*, Civ. No. A-3335-17, 2021 WL 4598592, at *1 n.2 (N.J. Super. Ct. App. Div. Oct. 7, 2021)

*seq.*, against all Defendants; Count III asserts a piercing of the corporate veil as to Muller and the various Defendants associated with him; Count IV asserts breach of fiduciary duty against Muller; Count V asserts a violation of the New Jersey Corporations Act against Muller; and Count VI asserts a claim for civil conspiracy against all Defendants except Michele Tolotta. (*See generally id.* at 25-33.) On December 20, 2021, Defendants except for Tolotta filed an Answer to the Complaint. (ECF No. 27.) On December 15, 2021, Tolotta filed a Motion to Dismiss pursuant to Rule 12(b)(1) and Rule 12(b)(6), which the Court denied. (ECF Nos. 21, 55.) Tolotta filed an Answer to the Complaint with a crossclaim against the other Defendants on February 22, 2023. (ECF No. 56.) On March 15, 2023, the Buyer Defendants filed an Answer to Defendant Tolotta's crossclaim as well as crossclaims against the other Defendants.[23] (ECF No. 58.)

On May 5, 2023, Plaintiffs filed a Motion for Summary Judgment. (ECF No. 62.) The Motion was stayed pending settlement conferences. (ECF No 68.)

On January 24, 2024, while Plaintiffs' Motion was stayed, Plaintiffs filed an Order to Show Cause seeking a Temporary Restraining Order (TRO) and Preliminary Injunction. (ECF No. 72.) Plaintiffs alleged that Muller Realty and Muller Powersports (the TRO Defendants) each filed an Assignment for the Benefit of Creditors action in New Jersey state court on January 2, 2024, despite the instant litigation over the judgment allegedly owed to Plaintiffs. (*Id.* at 10.) In that state court litigation, the TRO Defendants proposed to transfer their remaining assets to an Assignee, who would sell the assets and distribute the proceeds to creditors. (*Id.* at 10-11.) Plaintiffs argued that this was an attempt by the TRO Defendants to delay and obstruct resolution

---

(noting that the UFTA was amended to the UVTA "[e]ffective after the transactions here" and applying "the pre-UVTA statute as it was written when the relevant transfers were made").

[23] The entities associated with Muller did not file an Answer to Tolotta's crossclaim.

of the instant litigation. (*Id.* at 11.) The Motion therefore sought to restrain the TRO Defendants from selling their assets in the state court action while the present fraudulent transfer action was pending. (*Id.* at 10.) On February 8, 2024, the Court permitted the sale of assets but restrained the Assignee from disbursing or distributing any proceeds raised through their sale or auction. (ECF No. 81 at 1.) The Court denied the remainder of Plaintiffs' TRO application. (*Id.*)

On February 16, 2024, the Court granted a preliminary injunction. (ECF No. 86.) The Court found a reasonable probability of eventual success on the merits of Plaintiffs' fraudulent transfer claims against Muller Powersports and Muller Realty. (*Id.* at 2 (citing N.J. Stat. Ann. § 25:2-25, *et seq.*).) It reasoned that pursuant to the UFTA, Plaintiffs would be entitled to "an attachment or other provisional remedy against the asset transferred or other property of the transferee" as well as "an injunction against further disposition by the debtor or transferee, or both, of the asset transferred or of other property." (*Id.* (citing N.J. Stat. Ann. § 25:2-29(2)-(3)(a)).) After finding that Plaintiffs would be irreparably injured without the injunction, that there was little possibility of harm to any other interested persons from the grant or denial of the injunction, and that the public interest supported the issuance of the injunction, the Court ordered that the TRO Defendants and the Assignee were preliminarily enjoined from disbursing or distributing the proceeds of any sale of assets assigned by the TRO Defendants to the Assignee pursuant to the state court actions until further order of this Court. (*Id.* at 2-3.)

On July 9, 2025, Plaintiffs and the Buyer Defendants filed their respective Motions for Summary Judgment. (ECF No. 109; ECF No. 113.) On July 10, 2025, the Buyer Defendants filed a Motion for Sanctions. (ECF No. 117.) On July 21, 2025, Tolotta filed a Motion for Summary Judgment. (ECF No. 122.) The Court held oral argument on these pending Motions on March 26, 2026, (ECF No. 162), and the Motions are now ripe for review.

## II. LEGAL STANDARD

### A. Rule 56

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*; *see also Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (stating a fact is "material" if its "existence or nonexistence might impact the outcome of the suit under the governing law"). When deciding the existence of a genuine dispute of material fact, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. The Court must grant summary judgment if any party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *see also Roofer's Pension Fund v. Papa*, 687 F. Supp. 3d 604, 616 (D.N.J. 2023) ("In the face of a properly supported summary judgment motion, the nonmovant's burden is rigorous: the party 'must point to concrete evidence in the record'—mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment." (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995))). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

The standard is the same in the context of dueling motions for summary judgment. *See Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016). "When both parties move for summary judgment, '[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard.'" *Id.* (quoting 10A Charles Alan Wright et al., Federal Practice & Procedure § 2720 (3d ed. 2016)).

**B. Rule 11**

Rule 11 permits a court to impose sanctions on a party who has presented a pleading, motion, or other paper to the court without evidentiary support or for "any improper purpose." Fed. R. Civ. P. 11(b). "[T]he central purpose of Rule 11 is to deter baseless filings in District Court and thus, consistent with the Rule Enabling Act's grant of authority, streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990); *Reardon v. Murphy*, Civ. No. 18-11372, 2019 WL 4727940, at *4 (D.N.J. Sept. 27, 2019).

District courts have the power to enjoin the filing of meritless actions "where the pleadings raise issues identical or similar to those that have been adjudicated." *In re Packer Ave. Assocs.*, 884 F.2d 745, 747 (3d Cir. 1989). However, such injunctions should be "narrowly tailored and sparingly used," *id.*, because "access to the courts is a fundamental tenet to our system[, and] legitimate claims should receive a full and fair hearing no matter how litigious the plaintiff may be." *Abdul-Akbar v. Watson*, 901 F.2d 329, 332 (3d Cir. 1990) (quoting *In re Oliver*, 682 F.2d 443, 446 (3d Cir. 1982)).

There are "several methods of achieving the various goals of Rule 11," including reasonable attorneys' fees, expenses, or nonmonetary directives. *Doering v. Union Cnty. Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988); *see also* Fed. R. Civ. P. 11(c)(4). A court is granted broad discretion in choosing the nature and severity of sanctions in a particular case.

*See DiPaolo v. Moran*, 407 F.3d 140, 146 (3d Cir. 2005); *Levy v. Jaguar Land Rover N. Am., LLC*, Civ. No. 19-13497, 2020 WL 563637, at *8 (D.N.J. Feb. 4, 2020). The rule is intended to discourage the filing of frivolous, unsupported, or unreasonable claims by "impos[ing] on counsel a duty to look before leaping and may be seen as a litigation version of the familiar railroad crossing admonition to 'stop, look, and listen.'" *Lieb v. Topstone Indus. Inc.*, 788 F.2d 151, 157 (3d Cir. 1986); *Keyes v. Nationstar Mortg., LLC*, Civ. No. 20-2649, 2020 WL 6111036, at *10 (D.N.J. Oct. 16, 2020).

Although a court has inherent powers to sanction misconduct, "resort to these inherent powers is not preferred when other remedies are available." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 278 F.3d 175, 189 (3d Cir. 2002). "Therefore, generally, a court's inherent power should be reserved for those cases in which the conduct of a party or an attorney is egregious and no other basis for sanctions exists." *Id.* (citation omitted).

## III. DISCUSSION

Plaintiffs' Motion for Summary Judgment asserts two claims of fraudulent transfer under the UFTA against the Buyer Defendants, SRQ Auto Consultants, MPS 22, Muller Powersports, Muller Realty and Michele Tolotta (Counts I and II). (ECF No. 1 at 25-28.) They also assert a count for piercing the corporate veil against Muller and his various entities (Count III), and a count of civil conspiracy against all Defendants except Tolotta (Count VI). (*Id.* at 28-29, 32-33.)

At the outset, the Court notes that Plaintiffs make no arguments against Rellum Realty or JJM Realty, although they are named as Defendants, so summary judgment is denied as to those Defendants to the extent it was sought. (*See generally* ECF No. 109.)

While Muller is named as a Defendant in this action, Plaintiffs have not sought summary judgment against him individually because he sought and obtained a bankruptcy discharge during this litigation. (ECF No. 110 at 5 n.1, 31 n.3.) Therefore, the Court will not address any claim

asserted against Muller and need not address Counts IV or V at all because they are asserted solely against Muller.[24]

The Court will first provide an overview of the governing law regarding the UFTA and civil conspiracy. Then, the Court will consider each Motion for Summary Judgment. *Auto-Owners*, 835 F.3d at 402.

**A. The New Jersey Uniform Fraudulent Transfer Act**

"The purpose of [the UFTA] is to prevent a debtor from placing his or her property beyond a creditor's reach." *Gilchinsky v. Nat'l Westminster Bank N.J.*, 732 A.2d 482, 488 (N.J. 1999) (citing *In re Wintz Cos.*, 230 B.R. 848, 859 (B.A.P. 8th Cir. 1999)). Indeed, "a debtor cannot deliberately cheat a creditor by removing his property from the jaws of execution." *Id.* (citation modified). As such, the UFTA permits a creditor who shows that a conveyance is a fraudulent transfer to "undo the wrongful transaction as to bring the property within the ambit of collection." *Id.* (citing *Hearn 45 St. Corp. v. Jano*, 27 N.E.2d 814, 816 (N.Y. 1940)). A judgment under the UFTA can be entered against "the first transferee of the asset or the person for whose benefit the transfer was made," or against "[a]ny subsequent transferee other than a good-faith transferee who took for value or from any subsequent transferee." N.J. Stat. Ann. § 25:2-30(b).

A "transfer" under the UFTA includes "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." N.J. Stat. Ann. § 25:2-22. A transfer can be fraudulent under the UFTA "if the transaction was completed (1) with the actual intent to defraud the creditor, or (2) through constructive fraud, where

---

[24] Plaintiffs shall file an appropriate stipulation of dismissal to the extent these claims are abandoned.

the debtor had no actual intent to commit fraud." *Middlebrooks v. Bondar*, Civ. No. A-0242-12T3, 2014 WL 43985, at *3 (N.J. Super. Ct. App. Div. Jan. 7, 2014) (citation omitted).

### ***1. Intent to Defraud***

Section 25:2-25(a) of the UFTA states in relevant part:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> a. With actual intent to hinder, delay, or defraud any creditor of the debtor[.]

N.J. Stat. Ann. § 25:2-25(a).[25] To prevail on a claim under § 25:2-25(a), a creditor seeking to set aside a conveyance has the burden of proving by clear and convincing evidence: (1) that "the debtor or person making the conveyance has put some asset beyond the reach of creditors which would have been available to them at some point in time but for the conveyance," and (2) that "the debtor transferred property with an intent to defraud, delay, or hinder the creditor." *Gilchinsky*, 732 A.2d at 488-89 (citation modified); *Jecker v. Hidden Valley, Inc.*, 27 A.3d 964, 969 (N.J. Super. Ct. App. Div. 2011) (citing *Barsotti v. Merced*, 788 A.2d 802, 811 (N.J. Super. Ct. App. Div. 2002) (collecting cases and stating "[i]t is well established that fraud must be proven by 'clear and convincing' evidence")).[26] These inquiries require "fact-specific determinations that must be resolved on a case-by-case basis." *Gilchinsky*, 732 A.2d at 489.

---

[25] Plaintiffs' brief states the elements of a claim under sub-section (a) of N.J. Stat. Ann. § 25:2-25. (ECF No. 110 at 27-29.) Therefore, the Court understands Plaintiffs' action to seek relief under this sub-section only.

[26] Courts use the "clear and convincing" standard when applying the 2018 version of the UFTA. *See, e.g.*, *Arch Fin. Servs., Inc. v. Geyer*, Civ. Nos. A-2332-11T4, A-3996-11T4, 2014 WL 5566687, at *6 (N.J. Super. Ct. App. Div. Oct. 10, 2013) (affirming trial court judge's conclusion that plaintiffs demonstrated a fraudulent transfer by clear and convincing evidence); *Gurevitch*, 2024 WL 4903590, at *8 (concluding that "the two or three badges of fraud present are insufficient to prove by clear and convincing evidence that defendant had actual or constructive

To determine the presence of "actual intent" to defraud, which "often must be established through inferential reasoning," *id.* at 490 (citation omitted), courts balance various factors called "badges of fraud," *id.*, which "represent circumstances that so frequently accompany fraudulent transfers that their presence gives rise to an inference of intent," *SASCO 1997 NI, LLC v. Zudkewich*, 2007 WL 1827257, at *7 (N.J. Super. Ct. App. Div. June 27, 2007) (citing *Gilchinsky*, 732 A.2d at 489). These factors are listed in N.J. Stat. Ann. § 25:2-26 and include but are not limited to:

> a. The transfer or obligation was to an insider;
>
> b. The debtor retained possession or control of the property transferred after the transfer;
>
> c. The transfer or obligation was disclosed or concealed;
>
> d. Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
>
> e. The transfer was of substantially all the debtor's assets;
>
> f. The debtor absconded;
>
> g. The debtor removed or concealed assets;
>
> h. The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
>
> i. The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

intent to defraud under the UFTA"). In the 2021 version of the UFTA, the New Jersey legislature changed the standard to require only a preponderance of the evidence. *See Majek Invs. LLC v. Conventus, LLC*, Civ. No. A-3247-20, 2023 WL 8226284, at *6 n.4 (N.J. Super. Ct. App. Div. Nov. 28, 2023) (noting this change in burden of proof). However, as noted *supra*, the 2021 version makes no mention of applying the revised law retroactively, and courts have applied the version of the UFTA that was operative at the time of the allegedly fraudulent conveyance. Therefore, the Court will do the same and apply a clear and convincing evidence standard.

> j. The transfer occurred shortly before or shortly after a substantial debt was incurred; and
>
> k. The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

*See also Gilchinsky*, 732 A.2d at 489-90 (listing factors in statute and noting courts can consider "any other factors relevant to the transaction"). The absence of certain factors is not suggestive of the absence of fraud; rather, "[t]he proper inquiry is whether the badges of fraud are present, not whether some factors are absent." *Id.* at 489-90. In some cases, the presence of a single badge of fraud may suffice to characterize a transaction as fraudulent. *Id.* at 489. More typically, though, while the presence of a single factor "may cast suspicion on the transferor's intent," it is "the confluence of several in one transaction" that "generally provides conclusive evidence of an actual intent to defraud." *Id.* at 490; *see also MSKP Oak Grove, LLC v. Venuto*, 839 F. App'x 708, 712 (3d Cir. 2020) ("If there are several badges, that creates a strong presumption of intent to defraud.").

The strong inference that results from the presence of multiple badges of fraud can be overcome by "a sufficient explanation" that "clearly rebut[s] the inference of actual fraudulent intent." *Gilchinsky*, 732 A.2d at 493. Moreover, § 25:2-30(a) of the UFTA creates a "good faith" defense in which "[a] transfer . . . is not voidable under [§ 25:2-25(a)] against a person who took in good faith and for a reasonably equivalent value[.]" As described by the New Jersey legislature, "a showing by a defendant that a reasonable equivalent has been given in good faith for a transfer or obligation is a complete defense although the debtor is shown to have intended to hinder, delay, or defraud creditors." 1988 N.J. Laws ch. 74, at 28,[27] available at https://hdl.handle.net/10929.1/32761 (Sponsor Statement); *see also id.* at 31-32 (Senate Labor,

---

[27] These page numbers refer to the digital file page number and not the printed page number.

Industry and Professions Committee Statement that "after a fraudulent transfer has been made or a fraudulent obligation has been incurred, a showing by a transferee or obligee that sufficient consideration has been given in good faith for a transfer or obligation is a complete defense even though the debtor is shown to have intended to hinder, delay or defraud creditors"). Moreover, "[a] good faith transferee or obligee who has given less than a reasonable equivalent is nevertheless allowed a reduction in liability to the extent of the value given." *Id.* at 14 (Sponsor Statement). "However, the burden is on the transferee to demonstrate this affirmative defense." *125 Monitor Holdings, LLC v. Botanical Realty Assocs.*, Civ. No. A-0310-20, 2023 WL 2577218, at *6 (N.J. Super. Ct. App. Div. Mar. 21, 2023) (quoting *N.J. Dep't of Env't Prot. v. Caldeira*, 768 A.2d 782, 793 (N.J. Super. Ct. App. Div. 2001), *rev'd on other grounds*, 794 A.2d 156 (2002)).

#### *2. Constructive Fraud*

By contrast, § 25:2-27(a) of the UFTA does not require a showing of the debtor's intent. *Motorworld, Inc. v. Benkendorf*, 156 A.3d 1061, 1064, 1072 (N.J. 2017). It states in relevant part:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

N.J. Stat. Ann. § 25:2-27(a).[28]

To prevail under § 25:2-27(a), a party must establish four elements by clear and convincing evidence. *Barsotti*, 788 A.2d at 811. First, the party must demonstrate the existence of a transfer

---

[28] Plaintiffs' brief includes the elements of a claim under N.J. Stat. Ann. § 25:2-27(a) only. (ECF No. 110 at 29-31.) After the Buyer Defendants' moving brief asserted that Plaintiffs did not pursue any theories under N.J. Stat. Ann. § 25:2-27(b), (ECF No. 114 at 22), Plaintiffs did not contest this in their opposition, (*see generally* ECF No. 126). As such, the Court only considers § 25:2-27(a) as to Count II.

or obligation. *Motorworld*, 156 A.3d 1061, 1070; *see also* N.J. Stat. Ann. § 25:2-22 (defining "transfer"); *see also* N.J. Stat. Ann. § 25:2-28 (describing when a transfer is made). Second, the party must establish that the creditor's claim arose before the transfer was made or the obligation incurred. *Motorworld*, 156 A.3d at 1070. Third, the party must show that the debtor was insolvent at the time of the transfer or obligation or that they became insolvent as a result. *Id.*

Fourth, the party must prove that no "reasonably equivalent value" was exchanged for the transfer. *Id.* This is a fact-sensitive inquiry that requires analysis of "the circumstances and terms of the transfer at issue." *Id.* (citations omitted). While "New Jersey law does not offer a universal definition of 'reasonably equivalent value,' . . . and neither does the case law," *VFB LLC v. Campbell Soup Co.*, 482 F.3d 624, 631 (3d Cir. 2007) (citing N.J. Stat. Ann. § 25:2-24(b), and *Flood v. Caro Corp.*, 640 A.2d 306, 310 (App. Div. 1994)), courts use a two-step process to determine reasonably equivalent value, *Motorworld*, 156 A.3d at 1070 (citing *In re Eckert*, 388 B.R. 813, 835 (N.D. Ill. 2008)). First, a court determines whether the debtor received value. *Motorworld*, 156 A.3d at 1070. "Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied, but value does not include an unperformed promise made otherwise than in the ordinary course of the promisor's business to furnish support to the debtor or another person." N.J. Stat. Ann. § 25:2-24(a). The debtor, rather than another person or entity, must receive the value. *Motorworld*, 156 A.3d at 1071 (citing N.J. Stat. Ann. § 25:2-27(a)). Second, a court considers whether the value is reasonably equivalent to what the debtor gave up at the time of the transaction. *Id.* at 1070. To conduct this inquiry, Courts consider "(1) whether the value of what was transferred is equal to the value of what was received; (2) the fair market value of what was transferred and received; (3)

whether the transaction took place at arm's length; and (4) the good faith of the transferee." *Id.* at 1071 (quoting *Eckert*, 388 B.R. at 835).

**B. Civil Conspiracy**

A civil conspiracy in New Jersey is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." *Morgan v. Union Cnty. Bd. of Chosen Freeholders*, 633 A.2d 985, 998 (N.J. Super. Ct. App. Div. 1993) (citation modified). "[A] creditor in New Jersey may bring a [civil conspiracy] claim against one who assists another in executing a fraudulent transfer." *Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 263 (N.J. 2005). To establish a conspiracy claim arising from purported fraudulent transfers, "[a] creditor . . . must satisfy the agreement and knowledge aspects of civil conspiracy and all of the underlying components of a UFTA claim: An unwitting party may not be liable under a conspiracy theory." *Id.*

To establish an agreement, a plaintiff "need not prove that each participant . . . knew the exact limits of the illegal plan or the identity of all participants." *Morgan*, 633 A.2d at 998 (citation modified). Indeed, the agreement "need not be express." *Id.* at 999. Rather, the participants "must share the general conspiratorial objective" and must know the agreement's "essential nature and general scope." *Id.* (citations omitted). And insofar as a jury could "infer from the circumstances [that the alleged conspirators] had a meeting of the minds and thus reached an understanding to achieve the conspiracy's objectives," the question of whether an agreement exists should not be taken from the jury. *Id.* at 998 (citation omitted).

**C. Evidentiary Objections**

Before turning to the merits of the Motions for Summary Judgment, the Court first addresses threshold evidentiary arguments raised by the Buyer Defendants and Plaintiffs.

### *1. Buyer Defendants' Objections to Plaintiffs' Evidence*

The Buyer Defendants ask the Court to strike certain exhibits attached to Plaintiffs' Motion, as well as all arguments made in Plaintiffs' moving papers that rely on those exhibits.[29] (ECF No. 121 at 18-21; ECF No. 134 at 5-7.) They list the exhibits at issue and a "basis of objection." (ECF No. 121 at 20-21.) They assert that Plaintiffs' counsel—whose declaration purportedly authenticates all 39 exhibits—lacks the first-hand personal knowledge required to authenticate the exhibits because he is an attorney and not a witness; that many documents are inadmissible hearsay which do not fall under any exception to the hearsay rule; and that deposition transcripts from the Judgment Action should not be allowed since "[n]either [Buyer] Defendants nor any of the other defendants in this case were parties" to that action, and thus the Defendants did not have an opportunity to participate in those depositions. (ECF No. 121 at 18-21.)

In response, Plaintiffs argue that the exhibits are properly authenticated because counsel possesses personal knowledge that the exhibits at issue were either produced in the Judgment Action or are true and correct copies of deposition transcripts from that litigation. (ECF No. 131 at 5-6.) Moreover, they argue that certain exhibits can be "easily authenticated" because they contain public docket information. (*Id.*) They also assert that the genuineness of certain exhibits is not truly at issue, the same "key material documents" are attached to the Buyer Defendants' Motion for Summary Judgment through Muller's declaration.[30] (*Id.*) In response to the Buyer

---

[29] The Buyer Defendants object to: (1) transcripts of the depositions of Muller and Muller's accountant from the Judgment Action (ECF Nos. 112-4, 112-5); and (2) documents from the Judgment Action, including MAG's brief opposing sanctions under Rule 37 and documents produced by MAG such as emails, MAG's financial statements, and contracts between Plaintiffs and MAG (ECF Nos. 112-8 to 112-15, 112-19 to 112-22, 112-24 to 112-27, 112-34 to 112-38). (ECF No. 121 at 20-21.)

[30] Plaintiffs do not identify which exhibits they claim fall into this category.

Defendants' concerns regarding hearsay, Plaintiffs note simply that the Buyer Defendants have raised a "blanket" hearsay objection. (*Id.* at 7.)

Under Rule 56(c)(2), a party can "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Indeed, "[i]t is well settled that only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." *Countryside Oil Co., Inc. v. Travelers Ins. Co.*, 928 F. Supp. 474, 482 (D.N.J. 1995); *see also Mall Chevrolet, Inc. v. Gen. Motors LLC*, 99 F.4th 622, 631 (3d Cir. 2024) ("[T]he nonmoving party, may object to the consideration of any fact within those materials that 'cannot be presented in a form that would be admissible in evidence.'") (citation omitted). However, "[a]lthough a party moving for summary judgment may only rely on evidence that would be admissible at trial, the evidence need not be in admissible form at the summary judgment stage." *Caminiti v. Cnty. of Essex, N.J.*, Civ. No. 04-4276, 2007 WL 2226005, at *11 (D.N.J. July 31, 2007) (citing *Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d 378, 387 n.13 (3d Cir. 1999), and *Stelwagon Mfg. Co. v. Tarmac Roofing Sys., Inc.*, 63 F.3d 1267, 1274 (3d Cir. 1995)). Indeed, if evidence can be authenticated and admissible at trial, then the Court can consider it at summary judgment. *See Egan v. Live Nation Worldwide, Inc.*, 764 F. App'x 204, 208 (3d Cir. 2019) ("A summary-judgment motion must be supported by facts that can 'be presented in a form that would be admissible,' though the evidence need not yet be authenticated and admissible." (quoting Fed. R. Civ. P. 56(c))); *Fraternal Ord. of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 238 (3d Cir. 2016) (stating that a court can consider hearsay at summary judgment "if [the statements] are *capable of being admissible at trial*" (emphasis in original)).

Moreover, "[t]he burden to authenticate a document is 'slight,'" and the party need only make "a prima facie showing of some competent evidence to support authentication," *Egan*, 764

F. App'x at 208 (quoting *United States v. Turner*, 718 F.3d 226, 232 (3d Cir. 2013)), and the proponent of a hearsay statement need only "explain the admissible form that is anticipated," *Fraternal Ord. of Police*, 842 F.3d at 238 (quoting Fed. R. Civ. P. 56 advisory committee's note to 2010 amendment). For example, in *Fraternal Order of Police*, the Third Circuit reversed the district court's exclusion of hearsay statements at summary judgment where "[p]laintiffs identified the third-party declarants, and nothing suggest[ed] that those declarants would be unavailable to testify at trial." *Id.* at 239. This "is all that [is] required" for hearsay evidence to survive. *Id.*

First, the Court will consider the documents from the Judgement Action submitted by Plaintiffs. The Buyer Defendants' objections regarding hearsay can be rectified through admissible evidence at trial. Indeed, many exhibits in question pertain to MAG, of which Muller undisputedly was the President and Chief Executive Officer. (*See* ECF No. 111 ¶ 2; ECF No. 121 ¶ 2.) Muller is a party to this lawsuit and has submitted a declaration in support of the Buyer Defendants' Motion, (*see* ECF No. 116), and as such, he is reasonably likely to be available to testify at trial. Also, Plaintiffs' counsel avers that he has "personal knowledge of the facts recited" in his declaration authenticating Plaintiffs' exhibits, and the burden of proof for authentication is slight. (ECF No. 112 at 2; *see also* ECF No. 131 at 5 ("The Declaration of Aaron D. Weinberg avers that Plaintiffs' summary judgment exhibits are, in fact, true and correct copies of documents produced in post-judgment discovery [in the Judgment Action."). Therefore, the Buyer Defendants' objections to the exhibits on authentication and/or hearsay grounds are unavailing. *See, e.g.*, *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1542 (3d Cir. 1990) ("[T]here is no indication that Spagnola's salesforce would be unavailable to testify at trial. [Thus t]he averments of Spagnola's affidavit are capable of proof through admissible evidence."); *Blackburn v. United Parcel Serv., Inc.*, 179 F.3d 81, 102 (3d Cir. 1999) ("We will assume that Blackburn's testimony

regarding what Zileski told him was effectively a proffer of the testimony that Zileski himself would give at trial, and we therefore treat this as evidence capable of being admitted at trial.").

Second, the Buyer Defendants argue that Plaintiffs inappropriately rely on deposition testimony from Muller and Muller's accountant from the Judgment Action because the depositions are being used as testimony against them even though they were not parties to the Judgment Action and thus were not present or represented at the depositions. (ECF No. 121 at 19-20.) In response, Plaintiffs point to the text of Rule 32(a)(8). (ECF No. 131 at 7.) It reads:

> A deposition lawfully taken, and, if required, filed in any federal- or state-court action may be used in a later action involving the same parties, or their representatives or successors in interest, to the same extent as if taken in the later action. A deposition previously taken may also be used as allowed by the Federal Rules of Evidence.

Fed. R. Civ. P. 32(a)(8). Plaintiffs also cite Federal Rule of Evidence 804(b)(1), which states that former testimony is not hearsay if the declarant is unavailable as a witness and if the testimony:

> (A) was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one; and
>
> (B) is now offered against a party who had—or, in a civil case, whose predecessor in interest had—an opportunity and similar motive to develop it by direct or cross examination.

Fed. R. Evid. 804(b)(1). Indeed, Rule 32(a)(8) and Federal Rule of Evidence 804(b)(1) provide "alternative path[s] for admissibility," and if either rule is satisfied, the deposition testimony may be used. *Cowley v. Acands, Inc.*, Civ. No. 07-62831, 2010 WL 5376338, at *3 n.4 (E.D. Pa. Dec. 23, 2010).

The Court finds the Judgment Action deposition testimony of Muller and his accountant, (ECF No. 112-4; ECF No. 112-5), cannot be relied on as evidence for purposes of Plaintiffs' Motion. Rule 32(a)(8) permits the use of depositions taken in earlier actions only if the later action is "involving the same parties, or their representatives or successors in interest." Here, the Buyer

Defendants were not parties to the Judgment Action, and Plaintiffs have not argued or made a showing that the Buyer Defendants are "a representative" of MAG or MAG's "successor in interest."[31] *See Ingenico Inc. v. Ioengine, LLC*, Civ. No. 18-826, 2022 WL 22835287, at *10 (D. Del. July 5, 2022) (finding Rule 32(a)(8) did not permit use of deposition from a separate action where that action and the one at bar were not "between the same parties" and the deponent was neither a representative nor successor in interest of a party in the prior action).

Federal Rule of Evidence 804(b)(1) also does not permit the use of these deposition transcripts. "In order for former testimony to be admissible under Rule 804(b)(1): 1) the declarant must be unavailable; 2) testimony must be taken at a hearing, deposition, or civil action or proceeding; and 3) the party against whom the testimony is now offered must have had, or its predecessor in interest must have had, an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." *N.J. Tpk. Auth. v. PPG Indus., Inc.*, 197 F.3d 96, 110 (3d Cir. 1999). "The similar-motive requirement assures that 'the earlier treatment of the witness is the rough equivalent of what the party against whom the statement is offered would do . . . if the witness were available to be examined by that party.'" *Haas v. 3M Co.*, 613 F. App'x 191, 196 (3d Cir. 2015) (quoting *Kirk v. Raymark Indus., Inc.*, 61 F.3d 147, 166 (3d Cir. 1995)). The requirement of a "similar" motive does not require that the party have an "identical" motive. *Id.* (citing *United States v. Salerno*, 505 U.S. 317, 326 (1992) (Blackmun, J., concurring)). Plaintiffs, as the party seeking to use this testimony as evidence, have the burden of establishing the testimony's admissibility. *Ingenico*, 2022 WL 22835287, at *6 (collecting cases). Here, Plaintiffs have not

---

[31] Although Chris Preziosi was subject to a third-party subpoena and deposed, Albert Preziosi and Route 31 Imports were not represented. (*See* ECF No. 112-28 at 3-4 (identifying Chris Preziosi as a "third-party subpoenaed part[y]").) As such, even if the Court considered Chris Preziosi's participation in the Judgment Action to render him a "party" for Rule 32(a)(8) purposes, the actions would not be "involving the same parties." Fed. R. Civ. P. 32(a)(8).

established that Muller or his accountant are unavailable—and, indeed, Muller's participation in this litigation suggests otherwise. Moreover, Plaintiffs have not articulated any "opportunity and similar motive" the Buyer Defendants had to develop the deposition testimony at issue "by direct, cross, or redirect examination," or that any entity in the Judgment Action was a "predecessor in interest" of the Buyer Defendants. *N.J. Tpk. Auth.*, 197 F.3d at 110. As such, "it is impossible for [the Court] to determine on [its] own that these depositions are admissible," and the Court declines to do so. *Id.*

In sum, the Court agrees with the Buyer Defendants' objections to the transcripts of the depositions of Muller and Muller's accountant from the Judgment Action, (ECF No. 112-4; ECF No. 112-5), and thus the Court will not credit where Plaintiffs have relied on these exhibits in support of their Motion. The Court denies the Buyer Defendants' remaining objections and will consider the challenged exhibits.

### ***2. Plaintiffs' Objections to Defendants' Evidence***

Plaintiffs argue that the affidavits from Muller and Chris Preziosi are "sham affidavits" that "conflict with the unequivocal admissions in their depositions" and as such are insufficient to raise a genuine issue of material fact and must not be considered by the Court. (ECF No. 131 at 7-9.)

Under the sham affidavit rule, a court can disregard a later statement by a deponent when two conditions are satisfied: first, the later statement must contradict the witness's deposition testimony, and second, the discrepancy between the two statements must not be supported by record evidence nor otherwise satisfactorily explained. *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 209 (3d Cir. 2022); *see also Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 252-54 (3d Cir. 2007) (elaborating the Third Circuit's sham affidavit doctrine).

Plaintiffs offer no explanation of how the affidavits are a sham or conflict with deposition testimony, and it is not for the Court to engage in such a search on Plaintiffs' behalf. *See Perkins*

*v. City of Elizabeth*, 412 F. App'x 554, 555 (3d Cir. 2011) ("[A] court is not oblig[ated] to scour the record to find evidence that will support a party's claims. . . . Courts cannot become advocates for a party by doing for that party what the party ought to have done for him or herself."); *cf. DeShields v. Int'l Resort Props. Ltd.*, 463 F. App'x 117, 120 (3d Cir. 2012) ("If factual support for [a] claim existed in the record, it was incumbent upon [the parties] to direct the District Court's attention to those facts. . . . [J]udges are not like pigs, hunting for truffles buried in briefs."). Indeed, Muller was not deposed in connection with this action. (ECF No. 168 at 38:21-25.) Therefore, without more, the Court declines to disregard the affidavits.[32]

**D. Plaintiffs' Motion Against the Buyer Defendants**

Plaintiffs ask the Court to grant summary judgment against the Buyer Defendants for fraudulent transfers under UFTA, civil conspiracy, and aiding and abetting a fraudulent transaction.[33] (ECF No. 110 at 30-33.) At oral argument, Plaintiffs conceded that the only transfers

---

[32] Plaintiffs contend that Muller's "newfound recollection" about the Dealership Transaction as expressed through the affidavit is "incompetent, equivocal, and insufficient to raise a genuine issue of material fact" because he qualified it by such phrases as "if I remember correctly." (ECF No. 131 at 9.) The Court agrees that "seemingly uncertain testimony is inadequate to create a genuine dispute of material fact," and statements of uncertain reliability could not create an issue of fact for trial. *Sidman v. Saje Builds, LLC*, Civ. No. 14-2292, 2018 WL 398324, at *4 (M.D. Pa. Jan. 12, 2018); *see also N.J. Tpk. Auth. v. PPG Indus., Inc.*, 197 F.3d 96, 110 (3d Cir. 1999) (finding testimony that is "vague and imprecise" or "of questionable reliability" is "not sufficiently probative to create an issue for trial"). But, of course, the Court considers Muller's affidavit—and all evidence in the record—only insofar as the law permits.

[33] Plaintiffs do not assert a claim of aiding and abetting in their Complaint. (*See generally* ECF No. 1.) "It is improper to raise a new claim for the first time at summary judgment (or in opposition to summary judgment) without properly pleading it in the complaint." *Torain v. City of Philadelphia*, Civ. No. 14-1643, 2023 WL 174951, at *7 (E.D. Pa. Jan. 12, 2023) (collecting cases). Therefore, the Court will not consider any claim of aiding and abetting. Plaintiffs also seek summary judgment for Count III for piercing the corporate veil. (ECF No. 110 at 5 ("Plaintiffs are entitled to summary judgment on counts I-III, and [VI] of the Complaint[.]").) However, Plaintiffs provide no legal or factual support in their moving papers to warrant summary judgment. (*See generally id.*) As such, the Court declines to grant summary judgment for Plaintiffs as to Count III.

it seeks to avoid as to the Buyer Defendants are the payments made pursuant to the Consulting Agreement and the payoff of the Muller Realty real estate loan.[34] The Buyer Defendants oppose Plaintiff's Motion, (ECF No. 121), and cross-move for Summary Judgment, (ECF No. 113). The Court first considers the parties' Motions as to Plaintiffs' claims under the UFTA and then turns to the conspiracy claim.

### *1. Claims Under the UFTA*

Plaintiffs argue that they are entitled to summary judgment against the Buyer Defendants for claims under § 25:2-25(a) and § 25:2-27(a) of the UFTA because the Buyer Defendants "received fraudulent transfers," "knew that the consideration they paid" for the Asset Transaction and the Real Estate Transaction was "being diverted to other entities owned by Muller" away from MAG, and "MAG did not receive reasonably equivalent consideration for those assets because the proceeds of the sale were (purposefully) diverted to third parties." (ECF No. 110 at 24-26, 30-33.) In opposition, the Buyer Defendants argue that Plaintiffs have failed to establish the requisite elements of these claims. (ECF No. 121 at 38-42.)

#### *a. The Preziosis Individually*

The Preziosis, in their individual capacities, argue in their cross-motion that summary judgment should be granted in their favor because "they were not debtors of Plaintiffs or the recipients of any of MAG's assets." (ECF No. 114 at 39-40.) They argue that the UFTA provides a remedy only against debtors and transferees, and that the Preziosis were neither debtors nor

[34] At oral argument, Plaintiffs confirmed that, as to all Defendants, they challenge four "transactions or conveyances." (ECF No. 168 at 5:23-25.) They further confirmed that they pursue only the aforementioned two transfers as to the Buyer Defendants. Indeed, the Buyer Defendants do not address the other transfers (transfers to MPS 22 and Muller Powersports) in their opposition, (*see generally* ECF No. 121), and Plaintiffs do not object to such omission in their reply, (ECF No. 131).

transferees because they assigned their rights in the Asset Transaction and the Real Estate Transaction prior to closing. (*Id.* at 39-40 (citing N.J. Stat. Ann. § 25:2-29).) In response, Plaintiffs argue that the Preziosis should remain in the litigation because they negotiated the ASA and participated in the closing of the transactions. (ECF No. 126 at 33.)

It is undisputed that the Preziosis assigned their rights in the Asset Transaction and the Real Estate Transaction to Route 31 Imports and Route 31 Realty prior to Closing. (ECF No. 111 ¶ 5; ECF No. 121 ¶¶ 5, 47; ECF No. 131-1 ¶ 47.) Indeed, the bill of sale for the Dealership Transaction lists Route 31 Imports as the buyer. (ECF No. 113-3 at 2.) Plaintiffs have not identified evidence in the record to support an assertion that MAG's assets were transferred to the Preziosis in their individual capacities,[35] and Plaintiffs cite no law in support of their position that the Preziosis are directly liable under the UFTA for signing the initial ASA and Real Estate Agreements or for participating at Closing. (*See generally* ECF No. 110; ECF No. 126; ECF No. 131.) *See also* N.J. Stat. Ann. § 25:2-30(b);[36] *Travelers Prop. Casualty Co. of Am. v. Quickstuff, LLC*, Civ. No. 14-6105, 2016 WL 7231605, at *8 (D.N.J. Dec. 14, 2016) (granting summary judgment for a non-transferee defendant because a plaintiff "cannot state a claim for a direct violation of the UFTA against . . . a non-transferee").

---

35 Plaintiffs point to the Certificate of Formation for Route 31 Imports, (ECF No. 112-33), but this document does not establish that the Preziosis, in their individual capacities, received any asset that was rightfully owed to Plaintiffs. Plaintiffs also point to an excerpt from Chris Preziosi's deposition in which Chris testifies about payments made from settlement proceeds, (ECF No. 112-6, at 169:16-170:23; *id.* at 183:10-25), but this also does not establish that the Preziosis, as individuals, were a party to any transfer.

36 Plaintiffs cite this UFTA provision in their moving brief, although it is not clear whether they intend for it to be asserted as to the Preziosis. (ECF No. 110 at 32 ("The Court may enter judgment against '[t]he first transferee of the asset or the person for whose benefit the transfer was made.'" (quoting N.J. Stat. Ann. § 30b(1)(a)).) In any case, the Preziosis are not the "first transferee," as they assigned their rights in the transactions to Route 31 Imports and Route 31 Realty, and Plaintiffs do not directly address this tension.

Plaintiffs ask the Court to look past this issue because the Preziosis "knew that the consideration they paid was being diverted to other entities owned by Muller," (ECF No. 110 at 24-26; *see also* ECF No. 131 at 18; ECF No. 126 at 25-29), and Plaintiffs appear to claim in their papers that the Preziosis' involvement in the transactions should pierce the corporate veil of Route 31 Imports, (*see* ECF No. 110 at 5 (suggesting Counts I through III and VI—including the claim of piercing the corporate veil—are being sought against "Defendants" generally); ECF No. 126 at 9 (stating that Plaintiffs are entitled to summary judgment against the Buyer Defendants on "Counts I, II, III and VI").) However, Plaintiffs' Complaint asserts this remedy only against Muller and the entities Muller owns—not the Buyer Defendants. (*See* ECF No. 1 at 28-29.) *See also Torain*, 2023 WL 174951, at *7 (noting it is improper to raise a new claim for the first time at summary judgment). Moreover, Plaintiffs make no argument about this doctrine as to any Defendant in their papers; indeed, there is no argument in the papers that Route 31 Imports is a sham or a fraud. Piercing the corporate veil is an "extraordinary measure," *Flores v. HSBC*, Civ. No. 11-5525, 2012 WL 2522987, at *5 (D.N.J. June 29, 2012), and "the party seeking an exception to the fundamental principle that a corporation is a separate entity from its principal bears the burden of proving that the court should disregard the corporate entity," *Tung v. Briant Park Homes, Inc.*, 670 A.2d 1092, 1096 (N.J. Super. Ct. App. Div. 1996).

As such, Plaintiffs have not shown that the Preziosis are subject to Plaintiffs' UFTA claims. The Court denies Plaintiffs' Motion as to the Preziosis on Counts I and II and grants summary judgment for the Preziosis on these counts.

*b. Route 31 Imports*

As for Route 31 Imports, Plaintiffs argue that the transfers were fraudulent under both § 25:2-25 and § 25:2-27 because MAG did not receive consideration for the transfers at issue, as

it was instead "diverted to other entities owned and controlled by Muller." (ECF No. 110 at 7.) These purported diversions include: (1) payments from Route 31 Imports to SRQ Auto Consulting made pursuant to the Consulting Agreement; and (2) the loan payoff of the Muller Realty real estate loan. (ECF No. 110 at 6-7.) The Court considers each in turn.

First, Route 31 Imports argues that the Consulting Agreement does not fall under the UFTA because it paid Muller in exchange for Muller's availability to provide consulting services, rather than in exchange for the dealership assets owned by MAG. (ECF No. 121 at 27-28.) However, under the UFTA, "[t]ransfer" is "expansively defined," *Motorworld*, 156 A.3d at 1070, to include "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance," N.J. Stat. Ann. § 25:2-22. The ASA describes the Consulting Agreement as "inducement" for the parties to enter into the Dealership Transaction and stated that the parties "shall" enter into the Consulting Agreement at closing. (ECF No. 112-2 at 7, 21.) *See* Black's Law Dictionary (12th ed. 2024) (defining "inducement" as "[t]he benefit or advantage that causes a promisor to enter into a contract"). In other words, the Consulting Agreement served as an additional form of consideration for the Dealership Transaction, and it was mandatory under the ASA. Therefore, the Court finds that the Consulting Agreement, and the conveyances made pursuant to it, was in exchange for dealership assets and thus is not precluded from being a transfer contemplated by the UFTA.

Second, Route 31 Imports argues that the payment of the antecedent debt owed by Muller Realty was not a diversion of purchase monies that should have gone to MAG. (ECF No. 121 at 36-37.) However, like with the Consulting Agreement, the ASA describes the Real Estate Agreements as "express and prime inducement" to enter into the ASA. (ECF No. 112-2 at 7, 21.)

Therefore, for the same reasons the Consulting Agreement would fall under the UFTA, the Court finds that the Real Estate Transaction could be a mode of parting with the Toyota dealership's assets fraudulently. As such, the Court finds that these transfers were in exchange for MAG's assets and are not precluded from an UFTA claim on these grounds.

Third, the Buyer Defendants argue that these conveyances cannot be transfers under the UFTA because functionally all of MAG's assets were encumbered by the TMCC and GE liens at the time of sale.[37] (*See* ECF No. 121 at 23-27; ECF No. 114 at 23-26, 31, 34-35.) As for the TMCC liens, the Buyer Defendants note that the loan payoffs were not requested and did not process until June 27, whereas Closing occurred on June 26. (ECF No. 114 at 15-16; ECF No. 121 at 15.) They argue that the transaction therefore occurred while the assets were encumbered. (ECF No. 114 at 15-16; ECF No. 121 at 15.) Plaintiffs argue in response that only "fully encumbered" assets are excluded under the UFTA, and the assets here were sold "free and clear" of all liens and encumbrances as per the terms of the ASA and Real Estate Agreements. (ECF No. 126 at 16-23.)

A transfer under UFTA must "dispos[e] of or part[] with an asset," and UFTA defines "asset" to exclude property "to the extent it is encumbered by a valid lien."[38] N.J. Stat. Ann. § 25:2-21 (defining asset); N.J. Stat. Ann. § 25:2-22 (defining transfer). The New Jersey Appellate

---

37 The parties disagree as to whether TMCC received an interest in "all" assets of MAG, as the Buyer Defendants state in their papers. (*See, e.g.*, ECF No. 131-1 ¶¶ 41-42, 45.) The collateral listed in the loans at issue included, in short, (a) vehicles, (b) machinery and equipment, (c) accounts receivable, (d) all general intangibles including tax refunds, copyrights, etc., (e) all cash and non-cash proceeds from the sale of disposition of the foregoing, and (f) all books and records relating to any of the foregoing. (*See* ECF No. 121-6 at 3; 121-10 at 7.) However, this is not a material dispute.

38 A "valid lien" is defined as one that "is effective against the holder of a judicial lien subsequently obtained by legal or equitable process or proceedings." N.J. Stat. Ann. § 25:2-22.

Division has held that "a transfer of *fully* encumbered property does not involve an asset of the debtor and . . . is not a 'transfer' at all within the meaning of [the UFTA]." *Jecker*, 422 N.J. Super. at 166 (emphasis added) (citation omitted). It explained that "where a purported asset has no monetary worth," a plaintiff cannot demonstrate a cause of action under the UFTA because "technically no asset *of* value was transferred." *Id.* (quoting *Karo Mktg. Corp., Inc. v. Playdrome Am.*, 752 A.2d 341, 348 (N.J. Super. Ct. App. Div. 2000)). For example, in *Amato v. Cortese*, the Superior Court affirmed a trial court's finding that certain real property was not an asset under UFTA because the plaintiff failed to establish its value in excess of its mortgage. Civ. No. A-5518-12T2, 2015 WL 5009664, at *10 (N.J. Super. Ct. App. Div. Aug. 21, 2015).

*Jecker*'s holding that a transfer of fully encumbered property is not a transfer as defined by the UFTA accords with cases from outside this district.[39] *Compare Jecker*, 422 N.J. Super. at 166, *with In re Silver State Holdings*, No. 21-10212, 2022 WL 3755778, at *5 (5th Cir. Aug. 30, 2022) (applying Texas' UFTA and finding that the property at issue was "an asset to the extent of the difference between its value and the sum of the liens"); *Farstveet v. Rudolph ex rel. Eileen Rudolph Est.*, 630 N.W. 2d 24, 34 (N.D. 2001) (finding the "remaining equity in the property" after a mortgage and judgment lien is subject to North Dakota's UFTA); *Lee v. Fed. St. L.A., LLC*, Civ. No. 14-6264, 2016 WL 11745755, at *9 (C.D. Cal. June 27, 2016) (granting summary judgment to defendants where undisputed evidence demonstrated that the property was subject to liens that exceeded the property's value); *In re Valente*, 360 F.3d 256, 260 (1st Cir. 2004) (affirming District Court's finding that property encumbered by a mortgage exceeding its value was not an asset under

[39] "When we apply a uniform act, we may consider the law of other jurisdictions that have enacted similar provisions." *Motorworld, Inc. v. Benkendorf*, 156 A.3d 1061, 1069 n.4 (N.J. 2017). This also includes "decisions construing analogous provisions of the Bankruptcy Code." *Id.* (quoting *Klein v. Weidner*, 729 F.3d 280, 283 (3d Cir. 2013)).

the UFTA at the time of transfer); *Epperson v. Ent. Express, Inc.*, 338 F.Supp.2d 328, 342 (D. Conn. 2004) (holding property and note encumbered by security interests that exceeded their value were not assets under Connecticut's UFTA), *aff'd*, 159 F. App'x 249 (2d Cir. 2005); *Or. Acct. Sys., Inc. v. Greer*, 996 P.2d 1025, 1029 (Or. Ct. App. 2000) (interpreting "to the extent" language in Oregon's UFTA "to mean that property that is exempt from being an 'asset' under UFTA is the value of its equity that equals or is included in the amount of the valid lien(s) encumbering it; equity in excess of the amount of the encumbering lien(s) is an 'asset' under UFTA" and finding that the trial court erred by "dismissing the action for failure to state a claim on the theory that the mere presence of a lien exempted the entire property pleaded in the complaint from UFTA").

As such, the existence of a valid lien on property does not necessarily mean that the property is not an asset under UFTA. Rather, the question for the Court is whether the value of the encumbered property exceeds the value of any lien.

Based on the record before the Court, while evidence of the GE lien's *existence* is in the record, (*see* ECF No. 113-9 (financing statement continued twice since the Dealership Sale closed)), no party has produced evidence stating the *value* of that lien. Therefore, the Court cannot determine the extent to which MAG's assets were encumbered, and the Court declines to grant the Buyer Defendants summary judgment on this basis. *See Ryan Racing, LLC v. Gentilozzi*, Civ. No. 12-488, 2015 WL 728468, at *8-9 (W.D. Mich. Feb. 19, 2015) (denying defendants' summary judgment motion where "issues of fact preclude a finding that [the transferor] had no equity in its assets at the time of transfer").

The Court next considers the parties' substantive arguments regarding the elements of the UFTA claims. Under § 25:2-25(a), Plaintiffs asserted at oral argument that nearly all of the badges of fraud are present, including that the transfer was to an insider, (ECF No. 168 at 8:9-12), the

Case 3:21-cv-19831-GC-JBB Document 169 SEALED Filed 09/02/26 Page 39 of 55 PageID: 12853

Dealership Sale was concealed, (*id.* at 13-15), Muller was sued prior to the transfers, (*id.* at 7:9-8:3), the Dealership Sale involved substantially all of Muller's assets, (*id.* at 11:2-4), Muller absconded to Florida, (*id.* at 11:7-11), MAG did not receive reasonably equivalent value for the transfers, (*id.* at 11:15-18), Muller ultimately became insolvent, (*id.* at 7:5-8), and Muller was facing a judgment that would incur substantial debt, (*id.* at 7:23-8:1). The Buyer Defendants argue that they are entitled to the statutory "good faith" defense in § 25:2-30, as three witnesses, including one non-party, have attested that Route 31 Imports acquired MAG's property in good faith and Chris Preziosi has presented unrebutted expert testimony that Route 31 Imports paid "at least, and likely far more than, the reasonably equivalent value of the purchased assets."[40] (ECF No. 121 at 31-32 (quoting ECF No. 112-2 ¶ 10); *see also* ECF No. 114 at 7, 28-29.) They further argue that their intent is, at least, a disputed question of fact. (ECF No. 114 at 38; ECF No. 121 at 32-33.)

The Court first considers whether Plaintiffs have met their burden of establishing actual intent through these badges of fraud by clear and convincing evidence. Although at oral argument Plaintiffs' counsel asserted the existence of various badges of fraud, (ECF No. 168 at 7:5-8:3, 8:9-15, 11:7-18), counsel did not cite evidence to support these claims. Moreover, Plaintiffs' brief appears to assert several badges of fraud against Defendants generally, but does not cite evidence to support these assertions and these assertions are not made in Plaintiffs' Statement of Undisputed Material Fact (SUMF). (*Compare* ECF No. 110 at 31, *with* ECF No. 111.) Plaintiffs' SUMF does appear to assert at least two badges of fraud with respect to the transfers at issue as to the Buyer Defendants, but its support for these assertions is lacking. For example, ¶ 8 asserts that MAG was insolvent at the time of Dealership Sale and ¶¶ 10 and 31 assert that MAG did not receive

---

40 The Court notes only the arguments that it has not already addressed.

reasonably equivalent value for the transferred assets or real estate. (ECF No. 111 ¶¶ 8, 10, 31.) However, as support, Plaintiffs cite Muller's deposition from the Judgment Action, (ECF No. 112-4), which this Court has found inadmissible under the applicable procedure and evidence rules. Accordingly, the Court finds that Plaintiffs have not provided clear and convincing evidence of actual intent to defraud.

Moreover, even assuming that Plaintiffs have met their burden of establishing actual intent, the Court finds that Route 31 Imports prevails on its good faith defense because it has provided evidence that it took in good faith and for a reasonably equivalent value. N.J. Stat. Ann. § 25:2-30(a). Good faith is an objective inquiry that considers "what [the] transferee knew or should have known," requiring "not just a lack of actual knowledge of fraud, but also a lack of knowledge of circumstances requiring further investigation." *Dorsey v. DePaola*, Civ. No. 11-1026, 2012 WL 1957713, at *2 (M.D. Ala. May 31, 2012) (citation omitted). "Circumstances that would place a reasonable person on inquiry of a debtor's fraudulent purpose, or that show a diligent inquiry would have discovered the fraudulent purpose objectively proves a lack of good faith." *Id.*

In support of this defense, Route 31 Imports offers various pieces of evidence. It produces sworn declarations from Chris Preziosi, Albert Preziosi, and Lu Ann Brandle (the controller for Route 31 Imports and Route 31 Realty who was "responsible for financial transactions conducted on behalf of these two entities"), and each aver that Route 31 Imports entered into the Dealership Sale in good faith. (*See* ECF No. 120-1 ¶¶ 1, 19; ECF No. 120-17 ¶ 9; ECF No. 121-2 ¶ 9.) The Buyer Defendants also provide a sworn affidavit from Muller in which he avers he never discussed MAG's debt to Plaintiffs with the Buyer Defendants.[41] (ECF No. 121-4 ¶ 18.)

---

[41] While Plaintiffs challenge Muller's credibility, (see ECF No. 131 at 7-9), a Court may not make credibility determinations when considering a motion for summary judgment. *Davis v. Portline Transportes Maritime Internacional*, 16 F.3d 532, 536 n.3 (3d Cir. 1994).

Case 3:21-cv-19831-GC-JBB Document 165 SEALED Filed 09/02/24 Page 41 of 55 PageID: 12155

Plaintiffs assert this evidence is disputed because Chris Preziosi testified that he knew MAG used Plaintiffs' software to run the dealership and that the Preziosis planned to switch to a different software provider. (ECF No. 131-1 ¶ 58 (citing ECF No. 112-6 at 190:11-191:2).) They also argue that Chris Preziosi's deposition testimony stating that he did not care what Muller did with the proceeds of the Dealership Sale is "inconsistent with a finding of good faith." (ECF No. 131 at 18.) Further, at oral argument, Plaintiffs pointed to the ASA as purported evidence of the parties' intent, arguing that the absence of Plaintiffs' contracts from the list of assumed obligations evinces "their mutual plan . . . not to pay." (ECF No. 168 at 24:6-15.) Although good faith is a question of fact, no reasonable jury would find from these references—the Buyer Defendants' desire to switch software, Chris Preziosi's indifference to what Muller did with sale proceeds, and the absence of Plaintiffs' contracts in the ASA—that the Buyer Defendants knew or should have known of MAG's outstanding liability to Plaintiffs, that MAG did not intend to pay those debts, or that such liability motivated the sale. *See Fahs Rolston Paving Corp. v. Pennington Props. Dev. Corp., Inc.*, Civ. No. 03-4593, 2007 WL 2362606, at *6 (D.N.J. Aug. 14, 2007) ("Under New Jersey law when a company sells its assets, the purchasing company is not liable for the seller's debts and/or liabilities."). As such, based on the record before the Court, the Court finds that there is no genuine dispute that Route 31 Imports participated in the purchase of MAG's assets in good faith. *Cf. Sun Nat'l Bank v. Visci*, Civ. No. No. L-2215-09, 2011 WL 2410238, at *7 (N.J. Super. Ct. App. Div. June 8, 2011) (denying summary judgment as to the defendants' good faith defense because the burden rested with the defendants, "who did not submit any certifications in connection with their motion" and instead "relied solely upon stray deposition excerpts asserting their unawareness" of the purported fraud).

To prevail on a good faith defense, Route 31 Imports must also establish that it received MAG's assets in exchange for reasonably equivalent value. It argues that it has done so, pointing to the expert declaration from Chris Preziosi, who was declared and deposed as an expert in this case. (ECF No. 114 at 27-29, 31-32, 36, 38; ECF No. 121 at 31-38.) In a declaration, Preziosi outlined the methodology he used to calculate the value of the Toyota Dealership's assets and concluded that Route 31 Imports paid $6,508,802.15 for assets worth $2,974,146.15, which was "at least, and likely far more than, the reasonably equivalent value of the purchased assets." (ECF No. 134-1 ¶¶ 10, 15-17.) This payment is supported by the escrow ledger, which shows that Route 31 Imports contributed $6,662,098.40 in funds to the escrow account. (ECF No. 120-13.)

Plaintiffs did not file an opposing expert report or a motion *in limine* to exclude this evidence. (ECF No. 168 at 25:14-26:15.) They also have not argued that Preziosi's methodology or calculation was flawed. (*See, e.g.*, ECF No. 126 at 26 ("[T]he record is complete and there is no need for expert evidence because even a non-expert factfinder could determine that the transfers did not involve 'reasonably equivalent value.'").) Instead, at oral argument, Plaintiffs argued that Route 31 Imports "would have paid more money [for the dealership assets] if [Plaintiffs'] contracts had been paid." (ECF No. 168 at 26:16-19.) Plaintiffs provide no support for this assertion. And, if anything, the value of the assets would *decrease* by the amount MAG owed to Plaintiffs if the Buyer Defendants assumed this liability. At bottom, Plaintiff's assertion that the Buyer Defendants should have paid more does not create a factual dispute regarding Preziosi's conclusion that Route 31 Imports overpaid for the assets of the Toyota Dealership. As such, the mere decision of a buyer not to assume or pay a seller's liabilities does not make a transaction fraudulent *per se*, and neither the UFTA nor any caselaw cited by Plaintiffs suggests otherwise. Indeed, "[t]he UFTA does not

charge a court to consider whether a *creditor* of that debtor . . . received the 'value' at issue." *Motorworld*, 156 A.3d at 1074 (citing N.J. Stat. Ann. § 25:2-27(a)) (emphasis added).

The Court also does not find that the Consulting Agreement creates a genuine factual dispute that Route 31 Imports did not pay a reasonably equivalent value for the Dealership Transaction. Even if Route 31 Imports received nothing in return, the Court accepts this fact as further evidence that Route 31 Imports further overpaid for the assets.

As for the Muller Realty loan payoff, the record shows that MAG served as guarantor for that loan. "A guaranty is an antecedent debt, and thus courts recognize that payment on account of a pre-existing guaranty constitutes value." *In re Waterford Wedgwood USA, Inc.*, 500 B.R. 371, 381 (Bankr. S.D.N.Y. 2013) (citing *In re Nirvana Rest.*, 337 B.R. 495, 502 (Bankr. S.D.N.Y. 2006)); *see also In re Walters*, 163 B.R. 575, 581 (Bankr. C.D. Cal. 1994) (finding "beyond dispute" that the debtor was liable under the guaranty); *In re Pinktoe Tarantula Ltd.*, No. 18-10344, 2023 WL 2960894, at *3 (Bankr. D. Del. Apr. 14, 2023) (finding a "[g]uaranty can satisfy the antecedent debt requirement" of a fraudulent transfer claim). As such, the payoff of the loan to Muller Realty for which MAG served as guarantor constituted value for MAG. Moreover, the Buyer Defendants have produced evidence establishing that they executed a $9,900,000.00 loan to complete the Real Estate Transaction, and they submitted an affidavit from their controller that avers that this loan was used to pay off the Muller Realty loan. (*See* ECF No. 120-4 at 2, lines 201-02 ("Amounts Paid By Or In Behalf Of [Buyer]"); ECF No. 120-1 ¶ 21.) Accordingly, the record establishes that Route 31 Realty paid off MAG's antecedent debt while incurring its own equivalent debt; Plaintiffs have produced no evidence that draws this into dispute.

While courts have denied summary judgment when factual questions regarding the value of the asset and the consideration paid for the asset precluded it, *see, e.g.*, *Nat'l Westminster Bank*

*N.J. v. Anders Engineering, Inc.*, 674 A.2d 638, 642 (N.J. Super. Ct. App. Div. 1996), here, Plaintiffs have produced no evidence that creates a factual dispute regarding these conclusions. Therefore, the Court finds that Plaintiffs have not established actual intent and that Route 31 Imports has established the good faith defense because the record shows it participated in the transaction in good faith and paid reasonably equivalent value for the Dealership Sale. Therefore, the Court grants summary judgment for Route 31 Imports on Count I for both transfers at issue.

As for the claim under § 25:2-27(a), Plaintiffs must establish by clear and convincing evidence that MAG "made the transfer . . . without receiving a reasonably equivalent value in exchange." N.J. Stat. Ann. § 25:2-27(a). For the reasons already discussed, the Court finds that Plaintiffs have not met this burden and their Motion as to this claim is denied. And because, as discussed *supra*, Route 31 Imports produced evidence showing that it paid reasonably equivalent value in exchange for MAG's dealership assets, and Plaintiffs have not established a factual dispute showing otherwise, the Court grants summary judgment for Route 31 Imports as to Plaintiffs' UFTA claims.

### *2. Conspiracy*

To prevail on a claim of conspiracy, an underlying violation of the UFTA must be established. *Banco Popular*, 876 A.3d at 263. Because the Court grants summary judgment in favor of the Buyer Defendants on the UFTA claims, Plaintiffs' conspiracy claims necessarily must fail. *Id.* (holding that "all of the underlying components of a UFTA claim" must be established to prevail on a related civil conspiracy claim). As such, the Court grants summary judgment to the Buyer Defendants as to this count.[42]

---

[42] The Court notes that civil conspiracy claims can be asserted against any "one who assists another in executing a fraudulent transfer." *Banco Popular N. Am.*, 876 A.2d at 263. Therefore, although the Preziosis assigned their rights in the transactions to Route 31 Imports, they could still be held liable for civil conspiracy. *Id.* However, Plaintiffs would have to establish that the

## E. Plaintiffs' Motion Against SRQ Auto Consultants, Muller Realty, MPS 22 and Muller Powersports

Plaintiffs' Motion for Summary Judgment against SRQ Auto Consultants, Muller Realty, MPS 22 and Muller Powersports is unopposed on all counts, as the Court did not receive opposition papers. (ECF No. 110 at 33.) When non-moving parties fail to file an opposition to a motion for summary judgment, "summary judgment, if appropriate, shall be entered against the [non-moving] party." Fed. R. Civ. P. 56(e). However, a non-movant's failure to respond is not enough to entitle the movant to summary judgment. *Mosch v. Brown*, 2007 WL 2682979, at *2 (D.N.J. Sept. 7, 2007). Rather, the Court "must still determine whether the moving party met its burden of proving that it is entitled to summary judgment." *Id.* (citing *Macias v. United States*, Civ. No. 05-1445, 2006 WL 1843111, at *1 n.1 (D.N.J. June 30, 2006)). Nonetheless, "where an unopposed summary judgment motion is properly filed and supported, 'it would be an exceptional case where the court concludes that summary judgment should nonetheless be denied or withheld.'" *Randle v. Twp. of Pennsauken*, Civ. No. 21-1073, 2023 WL 5816055, at *2-3 (D.N.J. Sep. 8, 2023) (quoting *Ruth v. Selective Ins. Co. of Am.*, Civ. No. 15-2616, 2017 WL 592146, at *3 (D.N.J. Feb. 14, 2017)). As such, the Court will evaluate Plaintiff's claims as to the transactions involving these entities.

---

Preziosis "share[d] the general conspiratorial objective" and knew the agreement's "essential nature and general scope." *Morgan*, 633 A.2d at 998. Moreover, bringing a claim "against one who assists another in executing a fraudulent transfer . . . require[s] the creditor to prove that the conspirator agreed to perform the fraudulent transfer." *Banco Popular*, 876 A.3d at 263. While it is undisputed that the Preziosis signed the ASA and the Real Estate Agreements, and Plaintiffs' contracts are not assumed or included through these Agreements, the Plaintiffs' SUMF contains no facts or evidence regarding the sharing of the conspiratorial objective or knowing the agreement's nature and scope, or that any purported conspirator agreed to perform the fraudulent transfer. (*See generally* ECF No. 111.) *Cf. Jones v. Dalton*, 867 F. Supp. 2d 572, 585 (D.N.J. 2012) ("Without more, several meetings do not prove a conspiracy."). By contrast, the Buyer Defendants assert that they "had no knowledge about monies supposedly owed by MAG to [Plaintiffs] . . . when the Dealership Transaction was negotiated or consummated," citing declarations from Chris and Albert. (ECF No. 121-1 ¶ 58.)

Plaintiffs assert that SRQ Auto Consultants and Muller Realty fraudulently received value from Route 31 Imports that should have gone to MAG. (ECF No. 110 at 14-16, 23-24.) However, Plaintiffs have not established that these entities received any transfer from MAG. *See Sun Nat'l Bank*, 2011 WL 2410238, at *7 (finding a defendant did not qualify as a transferee under UFTA because "he did not—on this record—receive a transfer" from the debtor). Therefore, Plaintiffs Motion is denied in full. Because there can be no liability for civil conspiracy based on fraudulent transfers absent an UFTA violation, *Banco Popular*, 876 A.2d at 263, the Court also declines to grant summary judgment against these Defendants as to Count VI.

Next, Plaintiffs seek summary judgment against MPS 22 on Counts I and II under UFTA and Count VI for conspiracy.[43] (ECF No. 110 at 6.) They assert that MAG fraudulently transferred $710,362.62 in closing proceeds to MPS 22. (*Id.* at 6, 16-17.) Plaintiffs cite substantial documentary evidence establishing that closing proceeds were transferred from the Dealership Sale escrow to a brokerage account belonging to MPS 22. (*See* ECF No. 111 ¶¶ 17-22; ECF No. 112-19; ECF No. 112-20; ECF No. 112-21; ECF No. 112-22.) To prevail under § 25:2-25(a), Plaintiffs must have established actual intent through the badges of fraud by clear and convincing evidence. Plaintiffs do not plainly state which badges of fraud are applicable to this transaction, but their SUMF asserts at least three badges of fraud related to this transfer: the transfer was to an insider, (ECF No. 111 ¶¶ 2, 18 (noting Muller as the sole member of MAG and MPS 22)), MAG received no value in return for the transfer of the closing proceeds, (*id.* ¶ 22), and MAG was

[43] Further, Plaintiffs seem to seek judgment against Muller Powersports for the MPS 22 transfer discussed above. (*See* ECF No. 111 ¶ 24.) They argue that MPS 22 transferred the proceeds to the brokerage account for Muller Powersports, and Muller Powersports then transferred this amount to the individual brokerage account of Muller. (ECF No. 110 at 19-21.) However, Plaintiffs do not articulate how these subsequent transfers fall under UFTA, as only MPS 22 is the transferee. As such, insofar as Plaintiffs seek summary judgment against Muller Powersports for this transfer, the Court declines to grant it.

insolvent at the time of the transfer, (*id.* ¶ 8). With at least three badges of fraud undisputed by MPS 22, and supported by the record,[44] the Court finds that MAG "made the transfer . . . with actual intent to hinder, delay, or defraud" Plaintiffs. N.J. Stat. Ann. § 25:2-25(a). MPS 22 did not oppose the Motion and thus has not argued that any defenses apply. As such, the Court grants summary judgment for Plaintiffs against MPS 22 in the amount of $710,632.62."[45] N.J. Stat. Ann. § 25:2-29; *id.* § 25:2-30(b) (allowing entry of judgment for the lesser of "the value of the asset transferred . . . or the amount necessary to satisfy the creditor's claim" against the first transferee of the asset transferred).

As for the transfer involving Muller Powersports, Plaintiffs argue that MAG fraudulently transferred $1,191,006.00 worth of used cars to Muller Powersports for no consideration, violating UFTA. (ECF No. 10 at 6, 17.) In support of this assertion, Plaintiffs' SUMF points to an email from MAG's accountant asking Muller to "[p]lease confirm exact amount of inventory you pulled

---

[44] The Court notes that certain evidence cited by Plaintiffs for these badges of fraud—deposition testimony from the Judgment Action—was disputed by the Buyer Defendants as inadmissible because the Buyer Defendants were not represented at those depositions. (*See* ECF No. 111 ¶ 21; ECF No. 121-1 ¶ 21.) But MPS 22 and Muller Powersports have not made such arguments, and "[f]ailing to raise an argument in opposition to a motion for summary judgment constitutes a waiver of that argument." *Nissan World, LLC v. Market Scan Info. Sys., Inc.*, Civ. No. 05-2839, 2014 WL 1716451, at *10 (D.N.J. Apr. 30, 2014). As such, the Court sees no reason to exclude this evidence as to those entities, including because Muller is a member of both LLCs and was a party to the Judgment Action. (ECF No. 111 ¶¶ 18, 23.)

[45] Because the Court grants summary judgment under § 25:2-25(a), the Court declines to consider Plaintiffs' Motion under § 25:2-27(a). *See Grassmueck v. Potala Village, LLC*, Civ. No. 17-236, 2018 WL 2984831, at *6 (W.D. Wash. June 14, 2018) (granting summary judgment under the actual intent to defraud provision of UFTA and declining to consider the plaintiff's claims under the constructive fraud provision); *Edgefield Holdings, LLC v. Blumberg 2 Trust*, Civ. No. 21-49, 2023 WL 3766807, at *4 n.3 (E.D. Tenn. June 1, 2023) (same).

from Muller Auto to Muller Powersports," with Muller replying "1191006."[46] (ECF No. 111 ¶¶ 26-27; ECF No. 112-27 at 3-4.) The Court finds that three badges of fraud may apply here as pled in Plaintiffs' SUMF: the transfer was to an insider, (ECF No. 111 ¶¶ 2, 23 (noting Muller as the member of MAG and MPS 22)), MAG was insolvent at the time of the transfer, (*id.* ¶ 8), and the exchange was not for reasonably equivalent value, (*id.* ¶ 27). However, while the email purportedly establishing a lack of consideration mentions "inventory," it is not clear from the cited evidence when the purported transfer occurred, that "inventory" refers to used cars, that Muller's response represents a dollar value, or that the inventory was exchanged for nothing in return. (*See* ECF No. 112-27.) The Court does not find that this email shows by clear and convincing evidence that MAG received no value in return for the transfer of the closing proceeds. (ECF No. 111 ¶ 22). With only two badges of fraud established, and absent further support, the Court declines to grant summary judgment for Plaintiffs for this purported transfer under the UFTA.

As for Count VI, which asserts a conspiracy, only MPS 22 and Muller Powersports remain in the litigation out of the purported co-conspirators. Plaintiffs have not provided argument or evidence regarding purported agreement between them and MAG. (*See* ECF No. 110 (discussing conspiracy only as to the Buyer Defendants); ECF No. 111.) *See Cure v. Krottinger*, Civ. No. 00-27, 2001 WL 258619, at *5 (N.D. Tex. Mar. 12, 2001) (denying summary judgment where the court "was not presented with any evidence or legal argument on this issue"). Therefore, the Court declines to grant summary judgment as to MPS 22 or Muller Powersports on this count.

---

[46] The Buyer Defendants argue these assertions are unsupported by the cited evidence because the email lacks reference to used cars or to MAG as the transferor. (ECF No. 121-1 ¶¶ 26-27.)

## F. Plaintiffs' Motion Against Michele Tolotta

Plaintiffs also move for summary judgment against Michele Tolotta. While Plaintiffs assert that "[e]ach Defendant is liable for fraudulent transfers under [§ 25:2-25] and [§ 25:2-27]," (ECF No. 110 at 31), Plaintiffs' moving papers state very little about Tolotta, (*id.* at 8, 24, 33), and only three paragraphs of Plaintiffs' SUMF pertain to Tolotta, (ECF No. 111 ¶¶ 32-34). Plaintiffs' moving brief argues that Tolotta "demanded and received $50,000 from the proceeds of the asset sale" and that Muller "diverted proceeds from the sale of . . . MAG's assets to satisfy his personal liability to his ex-wife." (ECF No. 110 at 24.) They further assert that Tolotta "did not provide any consideration" to MAG in return. (*Id.*) They argue that judgment should thus be entered in their favor against Tolotta for Counts I and II.

Tolotta opposed Plaintiff's Motion and cross-moves for summary judgment in a combined brief. (ECF No. 122.) She argues that Plaintiffs' Motion asserts only a claim under N.J. Stat. Ann. § 25:2-27, not under § 25:2-25(a), because Plaintiffs' brief and Plaintiffs' SUMF do not discuss badges of fraud. (ECF No. 122-7 at 13-15, 19-20.) She further argues that a claim under § 25:2-27 is unsupported by the evidence. (*Id.*)

In opposition to Tolotta's Motion, and in reply in further support of Plaintiffs' Motion, Plaintiffs argue that multiple badges of fraud are indeed present as to Tolotta.[47] (ECF No. 132 at 7-9.) They assert that Tolotta was an insider and provided no reasonably equivalent value for the payment, and that MAG was insolvent at the time of the transfer, "had been threatened with suit," and "concealed evidence of the transfers." (*Id.* at 6-7.) They argue Tolotta has otherwise failed to produce evidence that she is entitled to the $50,000 at issue. (*Id.* at 10-13.) While Plaintiffs discuss

[47] Plaintiffs filed a combined reply brief in further support of their Motion and in opposition to Tolotta's Motion. (ECF No. 132.)

badges of fraud in this later filing, these arguments are raised in opposition to Tolotta's Motion and in support of their own Motion only for the first time on reply. As such, while the Court will consider these arguments in opposition to Tolotta's Motion, "[w]here a reply brief raises new arguments in support of a motion for summary judgment, the district court is justified in disregarding them." *Gucciardi v. Bonide Prods., Inc.*, 28 F. Supp. 3d 383, 393 (E.D. Pa. 2014) (citation omitted).

Even if the Court considered whether Plaintiffs have established MAG's actual intent to defraud Plaintiffs through this transfer by the necessary clear and convincing standard, Plaintiffs would not prevail. Plaintiffs cite no evidence in support of their assertions that MAG concealed evidence of the transfers or had been threatened with suit. (ECF No. 110 at 6-7.) Plaintiffs state that MAG was insolvent as of the Dealership Sale in their SUMF and that MAG did not receive reasonably equivalent value, (ECF No. 110 ¶¶ 8, 34), but Tolotta objects to the cited evidence in her response to the SUMF, noting that it does not support these propositions, (ECF No. 122-1 ¶¶ 8, 34; ECF No. 122-2 at 3). What's more, Plaintiffs' cited support is the transcript of Muller's deposition in the Judgment Action, but Tolotta was not a party; for the reasons discussed *supra*, this evidence is not admissible as to Tolotta.

Moreover, while Plaintiffs assert Tolotta is an insider, an insider for the purposes of the UFTA has "the ability to influence or control the debtor's actions." *Gilchinsky*, 732 A.2d at 490. Plaintiffs argue that Tolotta was "able to exert control or influence" over MAG because the Order to Show Cause she requested successfully halted the Dealership Sale. (ECF No. 132 at 8-9.) However, Plaintiff's cited cases fail to support their position. For example, in *In re Chira*, while the Bankruptcy Court of the Southern District of Florida determined that the debtor's former wife was an insider because the wife had "the power to withhold from [the husband debtor] their minor

daughter's visitation rights, which she had threatened to use to her economic advantage," the Court distinguished the exercise of that power from the powers "to have [the husband] incarcerated for nonpayment of child support" and "to have a receiver appointed for their jointly owned business," noting that "the ability to obtain court orders does not, on its own, make a former spouse an insider." 353 B.R. 693, 725 (Bankr. S.D. Fla. 2006); *id.* at 725 n.289. The question is one of leverage: withholding the daughter's visitation for economic benefit left the husband debtor essentially helpless except to comply with his former wife's demands, but the debtor had control over unpaid child support and the running of the business.

Here, Tolotta's pursuit of court intervention seeking to enforce her divorce agreement is analogous to the latter two situations discussed in *Chira* where the spouse was found not to be an insider. Aside from Tolotta's enforcement of their divorce settlement, Plaintiffs have not identified any evidence of this purported leverage or closeness of relationship that Tolotta possessed over Muller, let alone clear and convincing evidence, and based on the Court's review, there is no such evidence in the record. As such, the Court finds that Plaintiffs have not established the necessary badges of fraud by clear and convincing evidence to warrant a judgment under § 25:2-25(a).

As for Count II, the Court finds that Plaintiffs have not established by clear and convincing evidence that no reasonably equivalent value was exchanged for the $50,000 payment. Plaintiffs assert that "[MAG] did not receive reasonably equivalent value for the $50,000 it transferred to Michele Tolotta." (ECF No. 111 ¶ 34.) Plaintiffs' SUMF cites Muller's deposition testimony from the Judgment Action to support this proposition, (*id.* (citing ECF No. 112-4)), and Plaintiffs' moving brief refers to the escrow account ledger as evidence of this. (ECF No. 110 at 24 (citing ECF No. 112-22).) However, as discussed *supra*, Muller's deposition testimony would not be admissible as to Tolotta since she was not a party to the Judgment Action, and, in any case, the

cited deposition testimony does not establish that MAG received nothing in return for the payment to Tolotta, as Muller was asked only if the payment was made. (ECF No. 112-4 at 206:4-20.) As for the ledger, it shows an outgoing wire to Tolotta with the description "Marital Settlement," which has the benefit of releasing Muller from any further obligations under the state Consent Order. (ECF No. 112-22.) The Court finds that this is not clear and convincing evidence of a lack of reasonably equivalent value. *Cf. Majek Investments LLC v. Conventus, LLC*, 2023 WL 8226284, at * 9 (N.J. Super. Ct. App. Div. Nov. 28, 2023) (affirming grant of summary judgment to defendant under § 25:2-25 where the plaintiff did not establish intent "by clear and convincing evidence or by a preponderance of the evidence").

By contrast, Tolotta argues that summary judgment should be granted in her favor on these Counts because the payment was the execution of the court order enforcing her equitable distribution, citing various relevant court orders. (ECF No. 122-7 at 19; *see also* ECF Nos. 122-4, 122-5, 122-6.) She further argues that, as a matter of law, her equitable distribution, which was awarded approximately 10 years prior to any litigation over Plaintiffs' contracts, was in exchange for good consideration. (ECF No. 122-7 at 19-20.) She avers that the payment was not a scheme to hinder or delay MAG's creditors and that Muller fought her when she sought her distribution. (ECF No. 122-2 ¶¶ 7-8.) Tolotta's lawyer similarly avers that the payment was not sought to hinder or delay MAG's creditors but rather was an enforcement of her equitable distribution. (ECF No. 122-3 ¶¶ 4-5.)

The record before the Court clearly establishes that Muller fought Tolotta's effort to collect payment, requiring court intervention. (ECF Nos. 122-4, 122-5, 122-6.) The court ordered that proceeds of the Dealership Sale be held in escrow and that Tolotta's distribution come from those

proceeds. (ECF No. 122-6.) The Court finds that Tolotta has established that the $50,000 payment was not made with intent to defraud and therefore grants her summary judgment as to Count I.

As for Count II, New Jersey law states that when considering equitable distributions of property, "[i]t shall be a rebuttable presumption that each party made a substantial financial or nonfinancial contribution to the acquisition of income and property while the party was married." N.J. Stat. Ann. § 2A:34-23.1 (2018). This statute "recognizes the significance of the mutual contributions of each spouse to the marital enterprise," as,

> [e]quitable distribution is based on the philosophy that marriage is a joint enterprise in which the interest in and entitlement to its underlying property is also joint and mutual. The entitlement to marital property is not dependent on economic contributions as such. Less tangible efforts are recognized as equally valuable to the overall prosperity of the familial entity.

*Carr v. Carr*, 576 A.2d 872, 877 (N.J. 1990). Indeed, "[s]everal courts have ruled that, in the absence of fraud, collusion or other irregularity, a valid divorce judgment or decree conclusively establishes 'reasonably equivalent value.'" *In re Christenson*, 667 B.R. 770, 784 (Bankr. S.D.N.Y. 2025) (collecting cases). As such, as a matter of law, the court-ordered payment in satisfaction of Tolotta's equitable distribution was for reasonably equivalent value. Therefore, the Court grants summary judgment in Tolotta's favor as to Count II.

**G. Buyer Defendants' Motion for Sanctions**

Finally, the Buyer Defendants filed a Motion for Sanctions against Plaintiffs after providing the requisite notice. (ECF No. 117.) They argue that Plaintiffs must be sanctioned as Plaintiffs' claims are frivolous for several factual and legal reasons. They assert that Plantiffs have not offered evidentiary support for their claims, such as an appraisal of the dealership assets, which they assert is essential to proving Plaintiffs' claims. (ECF No. 117-31 at 9.) They also argue that even if they developed such evidence, the Buyer Defendants cannot be held liable under the UFTA

because the alleged transfers do not meet the UFTA's definition of a "transfer," which Plaintiffs purportedly knew at the start of this case through Plaintiffs' discovery in the Judgment Action. (*Id.* at 9-11.) Defendants contend that Plaintiffs have "weaponized" claims and otherwise engaged in "spiteful, outrageous" litigation tactics to coax Defendants into a settlement. (*Id.* at 11-12.) In response, Plaintiffs argue that their claims have legal and factual merit. (*See generally* ECF No. 125.) Plaintiffs point to evidence that purportedly supports their claims, (*id.* at 11-15), and argue that the UFTA remedies extend to the Preziosi Defendants and the transfers at issue, (*id.* at 16-18).

Rule 11 prohibits any "pleading, written motion, or other paper" filed or submitted to the Court that is "presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed R. Civ. P. 11(b)(1). Moreover, claims, defenses, and other legal contentions must be warranted by existing law or otherwise nonfrivolous. Fed R. Civ. P. 11(b)(2). Factual contentions must have evidentiary support and denials of factual contentions must be "warranted on the evidence" or otherwise based on reasonable belief or lack of information. Fed. R. Civ. P. 11(b)(3)-(4). A court may impose sanctions for violations of Rule 11(b). *See* Fed. R. Civ. P. 11(c). "It is well-settled that the test for determining whether Rule 11 sanctions should be imposed is one of reasonableness under the circumstances, the determination of which falls within the sound discretion of the District Court." *Brubaker Kitchens, Inc. v. Brown*, 280 F. App'x 174, 185 (3d Cir. 2008) (quoting *Gary v. Braddock Cemetery*, 517 F.3d 195, 201 n.6 (3d Cir. 2008)). But sanctions awarded under Rule 11 are generally only warranted in the "exceptional circumstance where a claim or motion is patently unmeritous or frivolous." *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 289 (3d Cir. 1991) (quoting *Doering v. Union Cnty. Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988)).

The Court finds that sanctions against Plaintiffs are not warranted as the claims against the Buyer Defendants are not "patently unmeritous or frivolous." *Ford Motor Co.*, 930 F.2d at 289. Defendants' motion merely repeats disagreements with Plaintiffs' factual and legal assertions contained in their Motion for Summary Judgment. While Plaintiffs' position is subject to attack on the merits, the Court is unconvinced that the record before it establishes that Plaintiffs' claims were wholly without basis such that sanctions under Rule 11 are warranted. Accordingly, the Buyer Defendants' Motion for Sanctions is denied.

## IV. CONCLUSION

For the reasons described in this Opinion, and other good cause shown, Plaintiffs' Motion for Summary Judgment is **DENIED** as to the Buyer Defendants, Michele Tolotta, SRQ Auto, Muller Realty and Muller Powersports and **GRANTED in part** as to MPS 22; the Buyer Defendants' Motion for Summary Judgment is **GRANTED**; Michele Tolotta's Motion for Summary Judgment is **GRANTED**; and the Buyer Defendants' Motion for Sanctions is **DENIED**. An appropriate Order follows.

Dated: September 2, 2026

Georgette Castner

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE